M. Paul Rovak and Nathan Kaplan, Doing Business as All State Painting Service, Appellants, v. Parkside Veterans' Homes Project, Inc., Lewis Shaffer and Sidney W. Mandel, Appellees.

Gen. No. 46,647.

First District, First Division.

January 9, 1956.

Released for publication February 27, 1956.

A. S. Frankenstein, of Chicago, for appellants.

Shaffer, Seelig, Mandel & Shapiro, of Chicago, for appellees; David E. Malfar, and Ellis Shaffer, both of Chicago, of counsel.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

M. Paul Rovak and Nathan Kaplan, doing business as All State Painting Service, brought suit against Parkside Veterans' Homes Project, Inc., hereinafter referred to as Parkside, a corporation, to recover $9200, alleged to be due them under a Standby Agreement.

It appears that Parkside was indebted to the Reconstruction Finance Corporation (RFC) in the amount of $565,000 for a loan which had been reduced to $86,426.44, evidenced by a note which had been assigned by RFC to Lewis Shaffer and Sidney W. Mandel. On January 6, 1954 Shaffer and Mandel (who became parties to this suit upon the filing of their intervening petition) had purchased from RFC the balance of the indebtedness due it from Parkside, which was evidenced by the note delivered by RFC to the intervening petitioners. In addition thereto, RFC also assigned all its rights under the Standby Agreement to Shaffer and Mandel without recourse.

A determination of the main suit was deferred, pending a ruling on the petition of the intervening petitioners. The preliminary issue was submitted to the court for adjudication as a matter of law, upon facts set forth in the pleadings and an agreed statement of facts between the parties. Pursuant to argument and the submission of briefs, the court found the issues in favor of intervening petitioners Shaffer and Mandel, and ordered that the cause be dismissed at plaintiffs' costs.

The agreement provided that plaintiffs would not take any action to enforce their claim until such time

311

as the indebtedness due RFC was paid. Plaintiffs, appealing, contend that they have a right to maintain their action and recover a judgment by reason of the fact that RFC has been paid the amount that was due it, that the restraints as contained in the Standby Agreement were set up for the benefit of RFC because of a trust and confidence reposed therein, and that upon its transfer and assignment of the indebtedness due it, plaintiffs were at liberty to prosecute their cause of action against Parkside, since the agreement not to enforce suit was not assignable. The question presented is whether the Standby Agreement was assignable. Intervening petitioners take the position that the restraints enjoyed by RFC passed to them on assignment, and that accordingly under the terms of the Standby Agreement plaintiffs filed their suit prematurely.

 Paragraph 10 of the agreement in question reads in part as follows: "This Standby Agreement and all obligations hereunder or with respect hereto, of Borrower, Standby Creditor, and the Secondary Obligors, shall continue in full force and effect until payment in full of the indebtedness evidenced by the Note, notwithstanding any action which RFC, or Borrower, or others, with consent of RFC, may take or refrain from taking with respect to such indebtedness, and/or the Note, and/or any collateral . . . Standby Creditor and the Secondary Obligors hereby grant to RFC full power, in its uncontrolled discretion and without notice to them, to deal in any manner with the indebtedness evidenced by the Note and the collateral therefor. . . ." The inclusion of the words "or others, with consent of RFC" must be given effect in determining the intention of the parties as to the assignability of the agreement. This language unmistakably indicates that the obligation of the plaintiffs to refrain from suit against Parkside is not an obligation restricted to RFC; it is as well an obligation which may

312

be owed to third persons when RFC consents. The assignability of a contract is determined by the nature of the obligations contained in the contract. As stated in the leading case of Devlin v. Mayor et al. of the City of New York, 63 N. Y. 8: "The assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed rather than the supposed intent of the parties, except as that intent is expressed in the agreement." It may well be that plaintiffs here consented to the restraints of the contract because they were dealing with the governmental agency of RFC, but they cannot now contend that the contract was unassignable, for there is nothing in the agreement reserving assignment; thus in consenting to the contract they faced the possibility—or the risk, as they prefer to consider it—of assignment. The contract, since it purported on its face to be complete, must be construed by the court as it stands; it cannot be altered by judicial interpretation. Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252; In re Estate of Frayser, 401 Ill. 364.

Plaintiffs argue that contractual rights and privileges cannot be transferred or assigned if they involve a relation of personal confidence and trust and where the personal acts and qualities of one of the parties form a material portion of the contract. Corbin (4 Corbin on Contracts, § 865 (1951)) suggests that "in the matter of assignability as affected by the supposed 'personal' nature of the contract, . . . or by the existence of a relation of 'trust and confidence,' it will be helpful to consider the following questions: (1) What was the performance required of the defendant obligor? (2) What were the conditions on which it was the defendant's duty to render that performance? (3) What performance, if any, was the assignor under a duty to render?" Here, the performance required of plaintiffs was to refrain from prosecuting their claims against defendant during the length of the Standby

Agreement. The conditions on which it was the plaintiffs' duty to refrain from suit and "standby" were the lending by the RFC of $565,000 to defendant; and the duty of performance of the RFC, the assignor, under the Standby Agreement, was to loan $565,000 to defendant.

■ ■ Assignability of rights under a contract is governed by one vital factor—whether the assignor has fulfilled his duties under the contract to the other contracting party before the assignment of the contract to the assignee. The early case of Perkins v. Hadsell, 50 Ill. 216, held that an instrument which gives to a person an option to buy land, upon his performance of certain conditions, which he may or may not perform, as he may elect, may not be assignable by such person before he has acquired any right of property under it by performing the conditions, but it is assignable, in equity, thereafter. As plaintiffs contend, it is a well settled principle that an executory contract is not assignable without consent of both parties thereto where the personal acts and qualities of one of the parties form a material and integral part of the contract, and they cite Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, 328 Ill. 571, in support of this rule. The case involved the construction of an automobile policy insuring against theft in which it was specifically provided that no assignment of interest under the policy should become binding upon the association unless the written consent of the attorney was endorsed thereon and an additional membership fee was paid. The automobile was stolen and never recovered; the owner assigned his claim under the policy to another party who brought suit against the insurance association. It based its defense upon failure of the insured to comply with the terms of the policy regarding assignment, but the court held that the facts in the case brought it outside the rule of nonassignability, saying: "After the con-

314

tract has been fully executed and nothing remains to be done except to pay the money a different rule applies. The element of the personal character, credit and substance of the party with whom the contract is made is no longer material, because the contract has been completed and all that remains to be done is to pay the amount due. The claim becomes a chose in action, which is assignable and enforcible under section 18 of the Practice act. . . . In 26 Corpus Juris, 447, it is said: '. . . an assignment is valid even though the policy provides that it shall be void if assigned, either before or after loss, without the consent of the insurer, for such an assignment relates to the cause of action and not to the policy.' May on Insurance (vol. 2, sec. 386,) states the rule as follows: 'An assignment after loss is not the assignment of the policy but the assignment of a claim or debt—a chose in action. . . . The reason of the restriction is, that the company might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence, but after loss this reason no longer exists.' " In Sloan v. Williams, 138 Ill. 43, the assignee, Sloan, sued for specific performance of a contract for conveyance of land from defendant Williams. Shortly after suit was instituted the defendant died, and his widow, heirs and administratrix were made parties defendant. The contract had been assigned to plaintiff by the original defendant's attorney who had agreed to perfect title to certain real estate without remuneration, except that he was to have the option to buy or sell lots as therein set forth and he was not to be required to furnish any money. The Supreme Court affirmed the trial court in dismissing plaintiff's bill for want of equity on the ground that, although after the contract had been executed by the person agreeing to perform such personal service or exercise such personal skill, he could assign his right to recover com-

315

pensation therefor, he may not do so while any part of his services remains to be rendered. See also Price v. Pan-American Motors Corp., 217 Ill. App. 526.

The purchase of a negotiable instrument does not extinguish the obligations of the makers or affect the security given in connection therewith. The acquisition by the intervening petitioners of the note in question was a bona fide negotiation or purchase of the note, not a discharge of the indebtedness, and accordingly plaintiffs' obligation under the Standby Agreement was not terminated; intervening petitioners are entitled to the rights and reservations enjoyed by RFC. In Reliance State Bank v. Zisook, 222 Ill. App. 610, defendant defaulted in certain bonds he issued; the bonds were secured by a real-estate mortgage. Plaintiff purchased the bonds from the holder at maturity and subsequently instituted foreclosure action. Defendants contended that plaintiff could not maintain such an action since he was seeking subrogation only, but the court held that plaintiff could realize upon his security directly and foreclose the mortgage. In an out-of-state case, Briscol v. American Southern Trust Co., 176 Ark. 401, 4 S.W. 2d 912, there is the following pertinent language: "It is undoubtedly true . . . that a stranger may purchase negotiable paper either before or after maturity, in which event the paper is not discharged, and he becomes the holder of the same with all of the rights of his assignor, including the right to receive such collateral as his assignor may have had."

We think the court properly ruled that plaintiffs' suit against Parkside was prematurely filed, and therefore the order of dismissal is affirmed.

Order affirmed.

BURKE and NIEMEYER, JJ., concur.