FEDERAL DEPOSIT INSURANCE CORP., In Its Corporate Capacity, Plaintiff-Appellant,

v.

Daniel N. MATHESON and John H. Jenkins, Defendants-Appellees.

No. 86–1191.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1986.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 6, 1987.

T. Ray Guy, Carla Brundage Morrison, Dallas, Tex., for Federal Deposit Ins. Corp.

James P. Boldrick, Miles R. Nelson, Midland, Tex., for Matheson.

Thomas H. Watkins, Elizabeth G. Bloch, Austin, Tex., for Jenkins.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

The only question in this appeal is the effect of a paragraph in a guaranty contract. First National Bank of Midland (FNB) made loans to Trafalgar Drilling Company (Trafalgar). Daniel Matheson and John Jenkins executed guaranty forms provided by FNB. Because of the insolvency of FNB, the Federal Deposit Insurance Corporation (FDIC) became the holder of the notes. FDIC sued the guarantors, but the district court granted judgment for the defendant guarantors because of that court's interpretation of the language of the guaranty. We reverse.

**Facts**

Under the terms of the guaranties signed by the defendants, Matheson guaranteed 17.7% and Jenkins 19.2% of the indebtedness to FNB of Trafalgar Drilling Company, in which they were shareholders. Paragraph 7 of the guaranty provides:

This guaranty shall inure to the benefit of the transferee, assignee, or holder of the principal debt; however, all indebtedness to the Creditor shall first be paid

in full, before the assignee of any debt guaranteed shall receive any benefit of this contract of guaranty.

When FNB was declared insolvent by the Comptroller of the Currency, the FDIC was appointed Receiver. FDIC–Receiver sold the notes to FDIC–Corporate pursuant to what is called a "purchase and assumption transaction," [1] and so FDIC–Corporate, as the present holder of the debt, claims the benefit of the guaranty.

Trafalgar defaulted on payment of approximately $1.3 million owed on these notes, and FDIC-Corporate brought this suit against Matheson and Jenkins on their guaranty. Their defense was that FDIC had not paid FNB the full amount owed on the notes and, therefore, had not met a condition precedent provided in the above-quoted paragraph 7 of the guaranty. The district court agreed with that interpretation of the guaranty.

### Discussion

The guarantors and district judge read the language "all indebtedness to the Creditor shall first be paid in full" as imposing a requirement upon the assignee: that it must pay the Creditor "100 cents on the dollar" before the assignee may obtain payment from the guarantor.[2] If that were what the guaranty provided, the original lender would have placed itself in a strange and unacceptable position. In one and the same paragraph, the lender would have both provided for assignability of the note and inserted a condition that, as a practical matter, makes assignability impossible. For, if the lender itself needs a guaranty to make a loan acceptable, then, equally, any assignee of such loan would need the guaranty. Given that no rational buyer would take assignment without the guaranty, the upshot of paragraph 7 as appellees interpret it would be that the lender is unable to sell the note at a discount. This would make the note virtually unassignable, though the assignability of the note with the guaranty is the primary object of paragraph 7.

The guaranty must not be read to apply to the payment by the assignee for the transfer of the loan or indebtedness. That payment is not an "indebtedness" owed to the assignor by the assignee within the meaning of paragraph 7. There is no "indebtedness" owed between those two parties. The indebtedness to which the paragraph refers, and which is often repeated throughout the guaranty contract, is the indebtedness of Trafalgar to FNB. The lending bank saw to it that it obtained maximum protection from the guaranty, which expressly covered all debts owing by Trafalgar to FNB, and avoided any argument about priorities between FNB and an assignee against the guarantors. That priority could be released, of course, if FNB were required to do so in order to make the trade with the assignee. Furthermore, after partial assignment of the notes, if FNB chose to discharge any remaining part of Trafalgar's indebtedness it could do so,

---

1. The FDIC has two principal options in cases of bank failure: either to pay the depositors up to $100,000 each, or to arrange for a new bank to assume the old bank's deposits. The latter option, the "purchase and assumption transaction," is strongly preferred, both because it provides stability to the community and because it saves the FDIC money. In a purchase and assumption transaction, the FDIC sells the going concern value of the failed bank to another bank, in this case Republic Bank First National. The assuming bank is not required to purchase all assets of the failed bank, and typically it will reject the higher risk loans made by the defunct bank. Thus, the assuming bank normally will purchase more in liabilities (deposits) than in assets (loans), and the difference is made up by FDIC in its corporate capacity in lieu of payment to individual depositors. In exchange,

FDIC-Receiver assigns to FDIC-Corporate the remaining assets of the failed bank, namely, those rejected by the assuming bank. The FDIC pays for these higher risk loans not on the basis of their book or face values, but, rather, by paying that total sum necessary to balance the purchase and assumption transaction in which all assets are revalued according to current market conditions. As the testimony at the trial in this case brought out, the only way that a buyer for a bank or any of its assets can be found is by charging market value, rather than book or face, for those assets.

2. This presents a question solely of law, as the district court recognized, because it is a ruling on contract interpretation.

payment "in full" or no. The guarantors could not avoid liability on their guaranty by objecting to the method of payment accepted by FNB.

The district judge seemed to regard paragraph 7 as the means to prevent a windfall to a transferee who pays less than the full amount of the note and then collects all of it. We do not see this concern as a likely one for any party to the guaranty contract, nor do we find any windfall. Loans are assigned at a discounted value because the risks of collection or a change in going interest rates lower their value. If the assignee collects the full amount eventually, it is not a windfall but compensation for the cost and risk undertaken. In the present case it is unlikely that FDIC will actually collect the full amount of the debt, since the guaranties signed by Matheson and Jenkins total only 36.9% of the Trafalgar debt.

By paragraph 7 FNB obtained priority for payment by its guarantor should any debt of the same debtor remain outstanding after a partial transfer of "the indebtedness" to another. It is a common practice for banks to "participate" their loans, that is, share them with other banks. *See* Note, *Classification of Loan Participations Following the Insolvency of a Lead Bank*, 62 Tex.L.Rev. 1115, 1120–21 (1984). If a loan to one customer is partially transferred to another bank, paragraph 7 provides that the second bank cannot proceed against the guarantor unless "all indebtedness to the Creditor has been paid in full."

In the instant case no indebtedness to FNB remains, for there has been a total, not a partial, transfer of the Trafalgar debt to FDIC-Corporate. The creditor, FNB, is defunct and is now in the hands of FDIC. The correct application of paragraph 7 of the guaranty is that it "shall inure to the benefit of the transferee," and FDIC may recover on the note against the guarantors. The judgment of the district court is therefore reversed and the case is remanded to the district court for further proceedings consistent with our opinion.

REVERSED and REMANDED.