(No. 66469.—

COLLINS COMPANY, LTD. v. CARBOLINE COM-
PANY *et al.*

*Opinion filed December 15, 1988.*

James A. Clark and Mark E. Gralen, of Schiff, Hardin & Waite, of Chicago, for Collins Company, Ltd.

Robert J. Kopka, of Landau, Omahana & Kopka, Ltd., of Chicago, for Carboline Company.

JUSTICE STAMOS delivered the opinion of the court:

This cause is before us on a question of Illinois law certified by the United States Court of Appeals for the Seventh Circuit. The certified question is:

"In the absence of original contractual privity, does an express warranty extend to an assignee's right to sue for purely economic loss and consequential damages?"

For the reasons that follow and with the qualifications noted, we answer the question in the affirmative.

## FACTS

For purposes of our decision, the well-pleaded facts alleged in the underlying complaint will be taken as true, in the same way as they were taken by the district court when entering its order in the cause prior to appeal. Collins Co. v. Carboline Co. (N.D. Ill. Feb. 10, 1987), No. 86—C—1572 (order for judgment on the pleadings) (Norgle, J.).

In March 1981, Chicago Title and Trust Company, as trustee (Chicago Title), and Wachovia Bank and Trust Company, N.A. (Wachovia), owned a warehouse in Elk Grove Village, Illinois. The owners contracted with Flex-

ible Roof Contractors, a wholly owned division of Pureco Systems, Inc. (Pureco), to replace the roofing system at the warehouse. The roofing system was to be replaced with one manufactured by Carboline Company (Carboline).

In manufacturing and supplying the system, Carboline issued an express written warranty, warranting the installed system against leakage for 10 years from the date of completing the installation, which was stated in the warranty as March 17, 1981. The warranty also stated that final inspection of the installation by Carboline occurred on March 19, 1981, and that the warranty would be effective only upon Carboline's inspection and acceptance of the installation. The warranty copy attached to the complaint does not appear to bear a signature in behalf of Carboline, but in its answer Carboline admitted that it issued "to Wachovia Bank & Trust Co., N.A." a warranty as exemplified by the copy and that the warranty "speaks for itself."

The warranty contained numerous terms, limitations, and conditions and disclaimed any warranty of merchantability or of fitness for a particular purpose. It provided that Carboline's sole warranty obligation should be to repair roofing leaks caused by defects in the roofing material or by the roofing applicator's workmanship and that Carboline's financial liability for the repairs should not exceed "the owner's original cost" of the installed system.

The warranty also purported to relieve Carboline of liability for personal injury, damage to other parts of the warehouse or its contents, and consequential or incidental damages in contract or tort, including negligence. However, along with this ostensibly broad exculpation of Carboline, another and perhaps more limited term excluded coverage for failure of the roofing system because of vandalism, negligence, accidents, or attacks "by par-

ties *other than* Carboline or the roofing applicator" (emphasis added). The combined effect of these possibly contradictory clauses on Collins' claim for consequential damages is not part of the question before us. That question and the appellate opinion that poses it are framed only in terms of whether the assignee of *any* warranty ("an assignee") could have sufficient privity to sue for purely economic loss and consequential damages. See *Collins Co. v. Carboline Co.* (7th Cir. 1988), 837 F.2d 299, 303 ("whether *** an express warranty extends to a contractual assignee the original party's·right to sue for purely economic loss and consequential damages").

The warranty did not specifically identify the warrantee. In a blank labeled "Project Name and Location," the following legend was inserted: "Jarvis Ave. Job— 1441 Jarvis Ave. Elk Grove Village, IL." On a second, unlabeled blank line immediately below was inserted "Chicago Title & Trust Co., Ancillary Trustee/Trust Agreement #09—64234." On a third blank line labeled "Owner" and appearing immediately below the second line, the name "Wachovia Bank & Trust Co., N.A." was inserted. As completed, the warranty form did not make clear whether the Chicago Title designation was meant to denote an additional "owner" or simply to further identify the "project name and location"; however, at the end of the form, in a blank labeled "OWNER ACCEPTANCE," the words "CT&T CO., as Trustee aforesaid" were inserted, followed by a signature and the designation "Vice President" under date of June 1, 1981. A warranty term provided that Carboline would not be liable under the warranty until "the owner" had accepted the roofing contractor's installation by signing the warranty form. Nowhere did the warranty state that it extended or was limited to the "owner," whoever or of whatever that might be. In fact, one term provided merely that the warranty should be void if reasonable

care were not used "by the party occupying the building" in maintaining the roof.

It is also noteworthy that, despite the large number of terms and conditions expressed by the warranty form, no term forbade assignment of rights or obligations by any party.

In June 1984, Collins Company, Ltd. (Collins), acquired the warehouse building from Chicago Title and Wachovia. Beginning in or about May 1985, leaks developed in the roofing system, which have caused Collins to incur expense for temporary repairs, will require a complete replacement of the roofing system in the near future, and have interfered with the conduct of Collins' business. In 1986, Chicago Title and Wachovia assigned to Collins their rights under the warranty and any claims or rights they had against Pureco. The assignment was given in exchange for a covenant not to sue.

On March 6, 1986, Collins filed its three-count diversity complaint in the United States District Court for the Northern District of Illinois, Eastern Division, naming as defendants Carboline, Pureco, and David G. Dearlove. Dearlove, an architect, had been retained on behalf of Collins to inspect the warehouse building during negotiations for its acquisition.

In count I, Collins claimed $500,000 in damages from Carboline for breach of warranty. In that count, Collins asserted that the roofing system was defectively manufactured and installed and that Carboline was obliged under the warranty to replace the system and pay for any damages caused by leakage. Collins also asserted that it had relied on the warranty in deciding to purchase the building and that it had exercised due care in maintaining the roof. In the other two counts against Pureco and Dearlove respectively, Collins sought damages for negligent installation and for negligent inspection and misrepresentation.

As affirmative defenses, Carboline asserted that the warranty was not assignable and therefore denied that Chicago Title and Wachovia had made an assignment to Collins. Carboline also asserted that the warranty was not issued to Collins. In addition, Carboline asserted that Collins' damages against it, if any, were limited by the warranty terms and that the latter barred Collins' claim. Finally, Carboline asserted that the roof leaks and other damage claimed were caused not by a roofing system defect but by sources beyond Carboline's control for which Carboline has no liability.

On October 30, 1986, Carboline filed its motion and supporting memorandum for judgment on the pleadings as to count I. After responsive memoranda were filed, the district court entered an order on February 10, 1987, finding that the warranty covered goods within the scope of the Uniform Commercial Code (UCC) as adopted in Illinois (Ill. Rev. Stat. 1979, ch. 26, par. 2–105).

The district court noted that the Illinois legislature's failure to adopt a more expansive version of UCC section 2–318 (Ill. Rev. Stat. 1979, ch. 26, par. 2–318), regarding a warrantor's liability to third parties in horizontal privity, has been held to signify an intention to consider none but the classes of third parties specifically enumerated in the section as being in horizontal privity for purposes of breach-of-warranty actions. (*E.g., Miller v. Sears, Roebuck & Co.* (1986), 148 Ill. App. 3d 1022, 1025; contra *Whitaker v. Lian Feng Machine Co.* (1987), 156 Ill. App. 3d 316, 320 ("overruling" *Miller* and decided after the district court's decision).) The district court also noted cases that have held privity of contract to be generally a necessary element in Illinois for a warranty action alleging only economic loss as opposed to personal injury. *Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 899-900; *Crest Container*

*Corp. v. R.H. Bishop Co.* (1982), 111 Ill. App. 3d 1068, 1076; *R & L Grain Co. v. Chicago Eastern Corp.* (N.D. Ill. 1981), 531 F. Supp. 201, 208; accord *Bagel v. American Honda Motor Co.* (1985), 132 Ill. App. 3d 82, 88.

The district court then discussed our decision in *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, and concluded that because we declined in *Szajna* to abolish the vertical privity requirement in economic-loss actions for breach of implied warranties, we would decline to abolish the requirement in such actions under express warranties as well, "unless there are significant distinctions between express warranties and implied warranties." Despite Collins' arguments based on the law of assignments and an Oregon decision extending express warranties to remote purchasers if warranty terms did not provide otherwise (see *Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 698 P.2d 63), the district court noted that no Illinois case had adopted such reasoning and that in *Szajna* we emphasized the contractual elements of warranty and the comprehensive scheme of available UCC remedies (*Szajna*, 115 Ill. 2d at 304, 308-11; *cf. Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 86).

The district court stated its conviction that the supreme court of Illinois has no intention of abandoning privity in express-warranty actions seeking damages for economic loss but rather will await legislative action in that area. Accordingly, because it found that Collins was not in privity with Carboline, the district court granted Carboline's motion for judgment.

In denying Collins' motion for reconsideration, the district court characterized Illinois cases as not applying the general rule of free assignability when the theory of relief is breach of warranty. Despite Collins' argument that the Illinois cases merely involved subsequent purchasers or users of goods rather than explicitly contrac-

tual assignees of warranties, the court again relied on *Szajna* as having declined to abolish the privity requirement for economic-loss claims under implied warranties. The court stated that to disregard a privity requirement for economic-loss claims under express warranties would be to engage in judicial legislation of the type that we shunned in *Szajna*. The court thus declined to reconsider its holding and entered judgment against Collins as to count I on March 20, 1987.

On appeal, the Seventh Circuit court requested that we consider the certified question as one that may be determinative of the cause. (*Collins Co. v. Carboline Co.* (7th Cir. 1988), 837 F.2d 299; see 7th Cir. R. 52.) We accepted the certification, pursuant to our Rule 20 (107 Ill. 2d R. 20).

## OPINION

The district court's decision rested on two conclusions of Illinois law: (1) that privity is required of a plaintiff who seeks recovery under an express warranty, and (2) that Collins as assignee lacks privity with Carboline. If, however, the district court erred in either conclusion, the other becomes immaterial, for Collins would then be able to survive Carboline's motion for judgment on the pleadings. Likewise, the certified question implies consideration of the same two alternative points, and our response as to either could moot the other. Analyzing the issue in terms of the underlying case rather than in the abstract terms of the certified question: If privity is not required in order to sustain Collins' claim under the express warranty, we need not at all decide whether Collins' assignee status gives it privity; or, if Collins is in privity because it is an assignee, we need not decide whether privity is required.

We address merely the second alternative point and hold that the assignee of a warrantee's rights under an

express warranty, if the assignment is otherwise valid, succeeds to all those rights and thus stands in privity with the warrantor. This holding is in full harmony with our previous decisions, the actual language of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 2—210), and the majority of those few courts that have dealt with this precise question. Such an assignee's privity would generally enable it to sue for economic loss and consequential damages, just as an original contracting party might do.

However, we note that the certified question as framed and our answer to it do not take account, as may be ultimately necessary, of whether as a matter of law consequential damages are recoverable under the terms of the particular warranty at issue in this case, which contains certain language purporting to limit damages.

We have previously stated that an express warranty is imposed by the parties to a contract and is part of the sale contract and that an action for breach of express warranty is an action *ex contractu*. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 39.) It is clear that in its contractual nature an express warranty differs materially from an implied warranty. This is true even though there may sometimes be an indistinct line between examples of each so that "in a particular sale these warranties shade into each other" (R. Nordstrom, Handbook of the Law of Sales §74, at 229 (1970)).

An implied warranty is derived from the interplay of a transaction's factual circumstances with the foreseeable expectations of a buyer or other person who is protected by law in those expectations. (See *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185.) This is a concept that the common law recognized long before promulgation of the UCC, albeit a concept that was originally rather limited in application. (See, *e.g., Misner v. Granger* (1847), 9 Ill. (4 Gilm.) 69, 73-75; *Wiedeman v.*

*Keller* (1897), 171 Ill. 93, 96-98.) The implied warranty arises regardless of an affected seller's actual wishes.

By contrast, the warrantor is the master of the express warranty. (See Ill. Rev. Stat. 1979, ch. 26, par. 2—313(1); *Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 170, 698 P.2d 63, 65.) The warranty arises only because the warrantor has willed it into being by making the requisite affirmation as part of a contract to which it is an adjunct. The UCC recognizes the freedom of contract that generates express warranties and their terms or their absence:

> "The Code relies on market processes to reach a socially desirable outcome. It defers to the intentions of the parties because it presumes that they have adequate information and sufficient bargaining power to reach an agreement that advances the interests of the buyer, the seller, and society at large. ***
>
> \* \* \*
>
> *** The underlying economic principle is that rational decisionmakers will make exchanges that maximize utility." Note, *Privity Revisited: Tort Recovery by a Commercial Buyer for a Defective Product's Self-Inflicted Damage,* 84 Mich. L. Rev. 517, 524-26 (1985) (note by Mark A. Kaprelian).

Stated broadly, then, an express warranty is a creature of contract; an implied warranty is imposed by law. See *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 303-04; *Beckett v. F.W. Woolworth Co.* (1941), 376 Ill. 470, 473; *Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 169, 698 P.2d 63, 65; *Campus Sweater & Sportswear Co. v. M.B. Kahn Construction Co.* (D.S.C. 1979), 515 F. Supp. 64, 80, *aff'd without published opinion* (4th Cir. 1981), 644 F.2d 877; R. Nordstrom, Handbook of the Law of Sales §§55, 74, at 179-80, 229 (1970).

In this difference between express and implied warranty can arguably be found justification for a differing treatment of the lack of privity when express-warranty

claims are made by remote buyers or other persons. See, *e.g., Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 169-70, 698 P.2d 63, 65 (privity requirements for implied-warranty claims not necessarily applicable to express-warranty claims); *Fundin v. Chicago Pneumatic Tool Co.* (1984), 152 Cal. App. 3d 951, 957, 199 Cal. Rptr. 789, 794 (citing *Burr v. Sherwin Williams Co.* (1954), 42 Cal. 2d 682, 696, 268 P.2d 1041, 1048-49) (express-warranty claims involving labels or ads); *Prairie Production, Inc. v. Agchem Division-Pennwalt Corp.* (Ind. App. 1987), 514 N.E.2d 1299, 1302 (brochure and ads); *Koperski v. Husker Dodge, Inc.* (1981), 208 Neb. 29, 43-46, 302 N.W.2d 655, 663-64 (ads and express written warranty to "owners"); *Randy Knitwear, Inc. v. American Cyanamid Co.* (1962), 11 N.Y.2d 5, 181 N.E.2d 399, 226 N.Y.S.2d 363 (ads and labels); *Kinlaw v. Long Manufacturing N.C., Inc.* (1979), 298 N.C. 494, 501, 259 S.E.2d 552, 557 (owner's manual); *Baughn v. Honda Motor Co.* (1986), 107 Wash. 2d 127, 151-52, 727 P.2d 655, 669 (express representations by ads or otherwise); 2 L. Frumer & M. Friedman, Products Liability §§3.02(6), 3.02(9), at 3−201, 3−303 (1988); 2 W. Hawkland, Uniform Commercial Code Series §2−313:09, at 309, 132 n.6 (1984 & Supp. 1988); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code §§11−5, 11−7, at 407, 410-11 (2d ed. 1980); Annot., 16 A.L.R.3d 683, §2(a), at 687-88 (1967); *cf. Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185 (" 'any reasoning which would *arbitrarily* interpose a first buyer as an obstruction to someone equally as deserving of recovery [under an implied warranty] is incomprehensible' " (emphasis added)). But see, *e.g., Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 899-900; *Mt. Holly Ski Area v. U.S. Electrical Motors* (E.D. Mich. 1987), 666 F. Supp. 115 (applying Michigan law); *Anderson v. Dreis & Krump Manufac-*

*turing Corp.* (1987), 48 Wash. App. 432, 438, 739 P.2d 1177, 1182; 2 L. Frumer & M. Friedman, Products Liability §3.02(6), at 3—194 through 3—200 (1988); §3.02(6), at 23-24 (Supp. 1988).

Still, if (as here) privity in UCC terms can be found in the remote buyer, no occasion is presented to discuss further how its lack might affect a claim for breach of express warranty. (*Cf. Collins Co. v. Carboline Co.* (7th Cir. 1988), 837 F.2d 299, 301 (stating that privity or an assignment is required).) In order to elucidate, we must now examine concepts both of privity and of assignment.

Privity of contract or estate has been defined as "mutual *or successive* relationship to the same rights of property." (Emphasis added.) (*Moore v. Shook* (1916), 276 Ill. 47, 56; *Union National Bank v. International Bank* (1888), 123 Ill. 510, 515; *Country Mutual Insurance Co. v. Regent Homes Corp.* (1978), 64 Ill. App. 3d 666, 670; Black's Law Dictionary 1079 (5th ed. 1979).) The relationship may be by operation of law, by descent, or by voluntary or involuntary transfer. (*Towle v. Quante* (1910), 246 Ill. 568, 573.) Privity of contract is "[t]hat connection or relationship which exists between two or more contracting parties." Black's Law Dictionary 1079 (5th ed. 1979).

While "[p]rivity requires that the party suing has some contractual relationship with the one sued" (*Crest Container Corp. v. R.H. Bishop Co.* (1982), 111 Ill. App. 3d 1068, 1076), privity accompanies a valid assignment of the contract. For example, if a lessee's assignee assumes the lease obligations, privity of contract between assignee and lessor has been held to result. (*Leitch v. New York Central R.R. Co.* (1944), 388 Ill. 236, 242.) And the fact that a valid assignment of a contract would have conveyed privity was acknowledged in *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1016-17. According to one view, "[p]roperly understood, privity is only a

means of protecting a party guilty of breach against losses suffered by remote parties which are unanticipated and therefore not included in the calculation of costs." Kessler, *Products Liability*, 76 Yale L.J. 887, 892 (1967); see Speidel, *Warranty Theory, Economic Loss, and the Privity Requirement: Once More into the Void*, 67 B.U.L. Rev. 9, 24-25 & n.54 (1987).

Once made, an assignment puts the assignee into the shoes of the assignor. (*In re Estate of Martinek* (1986), 140 Ill. App. 3d 621, 629-30; see *People ex rel. Stone v. Nudelman* (1940), 376 Ill. 535, 538.) Because the assignor was in privity with the opposite contracting party, so is the assignee. Assignability of contract rights is freely recognized by the UCC:

> "The early common law viewed a contract as creating a personal relationship between the contracting parties—a relationship that was too personal to permit some third person to intrude through notions of assignment or delegation. Commercial realities, however, gradually eroded this doctrine until it was replaced by a substantial body of law supporting assignment and delegation. Section 2—210 of the Code accepts this later common law development." R. Nordstrom, Handbook of the Law of Sales §45, at 132 (1970).

The UCC, in section 2—210(2), allows only four exceptions to assignability of contract rights: where assignment "would *materially* change the duty of the other party," where it would "increase *materially* the burden or risk imposed on him by his contract," where it would "impair *materially* his chance of obtaining return performance," or where assignment is contrary to the parties' agreement. (Emphasis added.) Ill. Rev. Stat. 1979, ch. 26, par. 2—210(2); see R. Nordstrom, Handbook of the Law of Sales §45, at 134-35 (1970).

Whether an assignment of contract rights falls within one of the exceptions of section 2—210(2) is a question

to be decided on the facts of a particular case (R. Nordstrom, Handbook of the Law of Sales §45, at 134-35 (1970); see 6A C.J.S. *Assignments* §§29, 33 (1975); *cf. Rovak v. Parkside Veterans' Homes Project, Inc.* (1956), 8 Ill. App. 2d 310, 313-14), but, as to the assignment of warranty rights, "Georgia is the only state known to take the position that an assignment of [UCC] warranty rights will as a matter of law materially alter the risks and burdens of the seller." (W. Willier & F. Hart, Uniform Commercial Code Reporter-Digest §2—210, No. A11, in 6C pt. 1 Bender's U.C.C. Serv. (MB) 2—238.6 (Nov. 1984) (citing *Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co.* (S.D. Ga. 1981), 519 F. Supp. 60); see *Stewart v. Gainesville Glass Co.* (1975), 233 Ga. 578, 212 S.E.2d 377.) According to the cited commentators, "[s]uch a position completely forecloses the possibility of successfully assigning warranty rights and is in direct contravention of the spirit of Section 2—210(2) Official Comments 1 and 3." W. Willier & F. Hart, Uniform Commercial Code Reporter-Digest §2—210, No. A11, in 6C pt. 1 Bender's U.C.C. Serv. (MB) 2—238.6 (Nov. 1984).

Notwithstanding the cited commentary's grimness, and despite Georgia's rule (born of pre-UCC case law) against assignment of the UCC warranty rights themselves, even in Georgia the original warrantee's existing claim for breach can be assigned. See *Decatur North Associates, Ltd. v. Builders Glass, Inc.* (1986), 180 Ga. App. 862, 864, 350 S.E.2d 795, 797 (*dictum*) (services case outside UCC, thus warranty rights themselves assignable); *Irvin v. Lowe's of Gainesville, Inc.* (1983), 165 Ga. App. 828, 829, 302 S.E.2d 734, 735; *Kaiser Aluminum*, 519 F. Supp. at 74 (express 10-year warranty).

Meanwhile, assignability of a warrantee's rights through a contract of assignment has been recognized explicitly in Indiana and Minnesota and implicitly in Cali-

fornia, Florida, and Pennsylvania. (*Essex v. Ryan* (Ind. App. 1983), 446 N.E.2d 368, 374-75 (*dictum*); *Gold'n Plump Poultry, Inc. v. Simmons Engineering Co.* (8th Cir. 1986), 805 F.2d 1312, 1316 (applying Minnesota's UCC §2—210); *Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.* (9th Cir. 1982), 677 F.2d 771 (applying California law); *Eastern Refractories Co. v. Forty Eight Insulations, Inc.* (S.D.N.Y. 1987), 658 F. Supp. 197, 199, 201 (applying Florida law); *Johnson v. General Motors Corp.* (1986), 349 Pa. Super. 147, 152, 502 A.2d 1317, 1319.) Other Federal courts have also recognized the validity of assigning warranty rights and thereby preserving privity. (*Borg-Warner Leasing, a Division of Borg-Warner Acceptance Corp. v. Doyle Electric Co.* (11th Cir. 1984), 733 F.2d 833, 837 (apparently applying Florida law); *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority* (D.P.R. 1981), 528 F. Supp. 768, 782-86 (applying Puerto Rico civil law and common law).) In addition, assignability of breach-of-warranty claims, at least, has been recognized in Texas. *Kirby Forest Industries, Inc. v. Dobbs* (Tex. App. 1987), 743 S.W.2d 348, 354; *International Industries, Inc. v. Island State Bank* (S.D. Tex. 1971), 348 F. Supp. 886, 889 (applying Texas law).

Most significantly, though reported Illinois cases have not addressed the question in depth, the validity of assigning warranty rights has been implicitly assumed or even upheld by Illinois courts. (*E.g., Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 91-92 (one express-warranty plaintiff was an original purchaser's assignee, though warranty assignment was not at issue); *Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 338 (assignment of rights for breach of warranties was contemplated by lease); *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1978), 58 Ill. App. 3d 28, 30-31,

*aff'd & remanded on other grounds* (1980), 78 Ill. 2d 381 (though not at issue in supreme court, assignment to lessee of all lessor's rights in guaranties and warranties was said by appellate court to be an effective assignment of lessor's right to sue for breach of contract).) And, when one considers that an express warranty is merely a form of contractual undertaking, it becomes perfectly logical to permit rights under the warranty to be assigned in the same way as other contract rights if they do not fall within one of the UCC's exceptions to assignability. See *Essex v. Ryan* (Ind. App. 1983), 446 N.E.2d 368, 374-75; 4 A. Corbin, Corbin on Contracts §§773, 857, at 5-6 & n.6, 411-12 & n.21 (1951); 8 S. Williston, Contracts §998, at 727-29 (Jaeger 3d ed. 1964).

Despite Carboline's and the district court's reliance for a contrary conclusion on our decision in *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, the holding of that case is in harmony with our decision today.

In *Szajna*, we were asked to abolish the privity requirement in suits to recover for economic loss when breach of an implied warranty is alleged. (*Szajna*, 115 Ill. 2d at 301.) This we chose not to do, noting our previously expressed preference that recovery for economic loss be had within the framework of contract law. *Szajna*, 115 Ill. 2d at 304, 309-10, citing *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 79, 86.

In *Szajna* we thus declined to extend to subsequent nonprivity buyers the UCC's implied warranties in sales of new automobiles. (*Szajna*, 115 Ill. 2d at 305-06; see *Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill. 2d 288, 292, 294-95.) In so declining, we referred to the General Assembly's failure to adopt more expansive versions of the UCC's section 2—318 that would expressly attenuate privity requirements, and we observed that the UCC's overall contractual orientation would accommodate only

with some difficulty the further extension of implied warranties to nonprivity parties. (*Szajna,* 115 Ill. 2d at 307-09.) We also viewed then-recent legislative action in behalf of automobile buyers as making judicial intervention unnecessary. (*Szajna,* 115 Ill. 2d at 311-12.) Moreover, by operation of a Federal statute, the *Szajna* plaintiff benefited from an implied warranty that was supported by the privity statutorily conferred on him as a result of the express written warranty he received as a consumer. *Szajna,* 115 Ill. 2d at 312-16.

Rather than extend express warranties to nonprivity plaintiffs, our decision today finds privity in Collins under the terms of the UCC's " 'comprehensive scheme of remedies' " (*Szajna,* 115 Ill. 2d at 310, quoting *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 79-80). Thus, we act in conformity with *Szajna* even if *Szajna* does stand for an unwillingness so to extend such warranties. On this latter question we take no position, noting merely that there is a qualitative difference between the burden of implied warranties, which are imposed by law, and the nature of express warranties (such as here) freely given by warrantors and purporting to promise future performance for a stated number of years. Furthermore, as to UCC sections 2—313 and 2—318 (Ill. Rev. Stat. 1979, ch. 26, pars. 2—313, 2—318), the published comments leave a door at least slightly ajar for future extension of some warranties in appropriate circumstances to nonprivity plaintiffs. See *Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill. 2d 288, 292; *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 307-09; *Whitaker v. Lian Feng Machine Co.* (1987), 156 Ill. App. 3d 316, 319-20; Ill. Ann. Stat., ch. 26, par. 2—313, Uniform Commercial Code Comment, at 219 (Smith-Hurd 1963); Ill. Ann. Stat., ch. 26, par. 2—318, Illinois Code Comment, at 264, 115 (Smith-Hurd 1963 & Supp. 1988); Ill. Ann. Stat., ch. 26, par. 2—318,

Uniform Commercial Code Comment, at 115-16 (Smith-Hurd Supp. 1988).

Neither do we decide today whether an express warranty such as the one here—which, despite its voluminous detail, does not in terms limit its benefit to a specified warrantee, and which promises performance for a period of years—can actually be interpreted to run beyond its original holder even in the absence of formal assignment, as in *Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 170, 698 P.2d 63, 65. (*Cf. Collins Co. v. Carboline Co.* (7th Cir. 1988), 837 F.2d 299, 301 ("a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss").) Suffice it to say that *Szajna*'s clear preference for UCC contract law supports our application of the UCC's own assignment provision (Ill. Rev. Stat. 1979, ch. 26, par. 2—210(2)) to an express warranty that is a type of contract and under which a claim is *ex contractu*. This is not "judicial legislation" of the kind that *Szajna* forswore (*Szajna*, 115 Ill. 2d at 311) but rather honors the legislatively adopted and clearly expressed UCC law as well as established principles of warranty and other contract case law.

Our decision also potentially gives effect to the ostensible promise of performance made by Carboline in its warranty, instead of rendering the promise illusory on the happenstance basis of a transfer of the warranted goods before the end of the stated warranty period. After all, Carboline could have included a limitation on assignment in its express 10-year warranty if it had so desired. (See Ill. Rev. Stat. 1979, ch. 26, par. 2—210; 6A C.J.S. *Assignments* §30 (1975); *Rovak v. Parkside Veterans' Homes Project, Inc.* (1956), 8 Ill. App. 2d 310, 313-14; *cf. Immel v. Travelers Insurance Co.* (1940), 373 Ill. 256, 260; *Mueller v. Northwestern University* (1902), 195 Ill. 236, 249 (non-UCC cases).) "When commercial

parties of equal bargaining power allocate the risk of loss by contract, \*\*\* there is a strong public policy to give effect to the private allocation. Under the U.C.C., commercial parties can allocate the risk of loss from defects through warranties, disclaimers and limitations on warranties." *Henry Heide, Inc. v. WRH Products Co.* (3d Cir. 1985), 766 F.2d 105, 109, citing *Spring Motors Distributors, Inc. v. Ford Motor Co.* (1985), 98 N.J. 555, 576-77, 489 A.2d 660, 670-71.

In addition, though the vouching-in procedure established by section 2—607(5) of the UCC (Ill. Rev. Stat. 1987, ch. 26, par. 2—607(5)) remains available in proper cases (see *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 949-50 & n.1; *Crest Container Corp. v. R.H. Bishop Co.* (1982), 111 Ill. App. 3d 1068, 1075), our decision potentially avoids the need for any such circuitous litigation in this case.

We realize that, after we give our answer to the certified question, one issue necessarily remaining before the Federal courts will be whether in fact the purported assignment of warranty rights to Collins fell within one of the prohibitory exceptions of section 2—210(2) of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 2—210(2)). (See Ill. Ann. Stat., ch. 26, par. 2—210, Illinois Code Comment, at 163; par. 2—210, Uniform Commercial Code Comment, at 165-66 (Smith-Hurd 1963); *Dravo Equipment Co. v. German* (1985), 73 Or. App. 165, 698 P.2d 63.) However, our decision defers to both the UCC-recognized freedom of contract and the usual requirement of privity in contractual warranty actions, while avoiding the incongruous course of venerating contract law when it comes to privity but disregarding it when it comes to assignability.

In answer to the question certified by the United States Court of Appeals for the Seventh Circuit, we conclude that, because the assignee of an express warranty

acquires privity with the warrantor by virtue of a valid assignment, the express warranty does therefore "extend to an assignee's right to sue for purely economic loss and consequential damages."

*Certified question answered;*
*cause transferred.*