HOLCOMB STATE BANK, Petitioner-Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent-Appellee.

Second District   No. 2—88—0006

Opinion filed March 22, 1989.

Edward T. Graham, of Wheaton, for appellant.

Michael F. O'Brien and Donald Q. Manning, both of Clark, McGreevy & Johnson, P.C., of Rockford, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Petitioner, Holcomb State Bank, appeals from a grant of summary judgment in favor of respondent, Federal Deposit Insurance Corporation (FDIC), in this action for payment on a loan participation agreement. Holcomb contends (1) that the trial court improperly applied the doctrine of collateral estoppel in determining that Holcomb's rights under a participation agreement had already been determined in prior Federal court foreclosure proceedings; (2) that FDIC, in its capacity as receiver of an insolvent bank, was obligated to pay Holcomb the amount of its participation agreement upon sale of an underlying loan to FDIC in its corporate capacity; and (3) that summary judgment was improper because the trial court assumed facts not in the record.

On January 26, 1977, Rochelle Bank & Trust Co. (Rochelle), an Illinois State bank, loaned $200,000 to John W. Tilton Industries, Inc. (Tilton). The loan was secured by a trust deed to real estate consisting of a 50-lot subdivision in Ogle County. Shortly thereafter, Rochelle Bank and Holcomb State Bank (Holcomb) entered into a participation agreement whereby Holcomb agreed to participate in the Tilton loan

to the extent of $40,000. They executed a "Certificate of Participation" evidencing Holcomb's participation in the Tilton loan. The certificate of participation states in relevant part:

> "We [Rochelle Bank & Trust] hereby \*\*\* confirm your [Holcomb State Bank's] participation in the [Tilton] note, in the interest to accrue thereon from and after the date hereof, and in the pledged collateral in the proportion which your payment bears to the unpaid principal of the note on the date hereof.
>
> As payments of principal and interest on said note are received by us, we shall remit to you all principal payments until your participation has been repaid in full, plus interest in proportion to the outstanding balances of our respective participations in the loan on the date for which such interest is paid, provided, however, that all amounts realized by us from the collateral, if there shall be an event of default, shall be applied pro rata to the payment of the balances of principal and interest then due on our respective participations in the loan on the date of such default."

On October 11, 1980, the Commissioner of Banks and Trust Companies of the State of Illinois determined that Rochelle Bank was insolvent, ordered it to be closed, and appointed the FDIC as receiver to dissolve and wind up the affairs of Rochelle.

Upon its appointment as receiver, the FDIC filed, and the circuit court of Ogle County approved, an *ex parte* "Petition for an Order Approving Sale of Certain Assets and Transfer of Certain Liabilities." The petition requested the court's approval of a "Purchase and Assumption" agreement whereby (1) FDIC would transfer Rochelle's assets, except for its substandard loans, to an assuming bank (United Bank of Rochelle) which, in consideration of that transfer as well as a cash payment from the FDIC, would assume the deposit and certain other liabilities of Rochelle; (2) the FDIC, in its capacity as receiver of Rochelle, would sell all of Rochelle's substandard loans to the FDIC, acting in its separate corporate capacity, in exchange for payment of the cash necessary to facilitate the transaction with the assuming bank.

FDIC/corporate paid $4,432,600 for the purchase of the substandard loans. This figure represents the amount necessary for the assuming bank to balance the assets it was acquiring against the liabilities it was assuming. *FDIC v. Merchants National Bank* (11th Cir. 1984), 725 F.2d 634, 637-38, *cert. denied* (1984), 469 U.S. 829, 83 L. Ed. 2d 57, 105 S. Ct. 114.

A purchase and assumption transaction such as this one is the

preferred method of the FDIC in discharging its duties when an insured bank fails. It avoids the numerous disadvantages of the liquidation and deposit payoff alternative. (*Merchants National Bank*, 725 F.2d at 637.) The FDIC loan purchase was authorized under section 1823(e) of the Federal Deposit Insurance Act (Act) (12 U.S.C.A. §1823(e) (West 1980)) and is now authorized under section 1823(c) of the Act (12 U.S.C.A. §1823(c) (West 1980)).

One of the substandard loans transferred to FDIC/corporate was the $200,000 Tilton loan in which Holcomb was participating. As of December 1980, the Tilton loan was in default. FDIC/corporate brought suit in the United States District Court for the Northern District of Illinois against Holcomb and all other interested parties to foreclose upon the real estate collateral securing the note. Pursuant to section 1819 of the Act (12 U.S.C.A. §1819 (West 1980)), the Federal courts have jurisdiction in cases involving FDIC/corporate and its property interests. Holcomb filed a counterclaim in the Federal action seeking declaratory and injunctive relief and asking the court to enjoin FDIC/corporate from foreclosing on the trust deed until Holcomb either released its interest in the trust deed or consented to the foreclosure. On March 19, 1984, the Federal court dismissed Holcomb's amended counterclaim holding that the participation agreement created an ownership interest in favor of Holcomb in the trust deed and the proceeds of the loan; however, nothing in the participation agreement could be read to imply that the FDIC must fully satisfy Holcomb before foreclosing on the collateral.

During the pendency of the foreclosure action involving FDIC/corporate in Federal court, Holcomb filed its "Petition for Payment of Funds Held by Receiver" in the circuit court of Ogle County. Holcomb's petition sought an order:

"(a) denying FDIC, as Receiver, authority to sell, transfer or in any manner to impair the rights, titles and interests of HOLCOMB STATE BANK in and to the aforementioned trust deed which is held by the FDIC as collateral security for said certificate of participation until the said certificate of participation is paid and satisfied in full and the rights, titles and interest of HOLCOMB STATE BANK are released to the FDIC;

(b) directing the FDIC, as Receiver for the Rochelle Bank and Trust Company to pay HOLCOMB STATE BANK from the proceeds of the sale of the aforementioned trust deed and note to the FDIC, in its corporate capacity, the sum of $67,038.00, plus any additional accrued interest to the date of such payment; and,

(c) such further relief as the court deems just and proper."

The parties filed cross-motions for summary judgment on the petition.

On December 4, 1987, the trial court rendered its decision on the motions for summary judgment. The court entered a memorandum opinion and order granting summary judgment in favor of FDIC/receiver. The court found that the doctrine of collateral estoppel applied to Holcomb's petition for payment in that the Federal court decision on the foreclosure counterclaim had determined the rights under the participation agreement. Although the Federal court decision was directed to FDIC/corporate, Holcomb, as party to the Federal court proceeding, was estopped on the issues actually determined in the Federal court. Although the judge did hold that collateral estoppel applied in this case, he also stated that even if collateral estoppel did not apply, he was in agreement with the Federal court reasoning and decision, and he ruled on the merits.

The trial judge specifically held that under the participation agreement neither Rochelle Bank nor its receiver was contractually obligated to obtain Holcomb's permission to sell the Tilton loan, to share the proceeds from the sale of the Tilton loan with Holcomb, or to share ratably any receipts of the Tilton loan unless those payments were applicable to principal and interest. The court specifically held that the FDIC purchased the loan and that it did not make principal or interest payments to reduce the balance due on the loan.

■ Holcomb contends that the trial court was incorrect in applying the doctrine of collateral estoppel in this case. Holcomb states that the issue of its rights as against FDIC/receiver was not litigated in Federal court and that, pursuant to section 1819, State court is the proper venue for claims against the receiver. Although, indeed, State court is the proper venue for actions against receivers, if the questions presented here were properly presented and adjudicated in the Federal court foreclosure proceedings, then the appellant would be collaterally estopped from presenting the questions here. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959.) The fact that FDIC/receiver was not a party to the Federal court proceeding would not preclude application of collateral estoppel against Holcomb, the party against whom estoppel is asserted. See *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 633, 431 N.E.2d 1096.

In the Federal court proceedings, the trial judge determined Holcomb's rights as against FDIC/corporate. He found that the participation agreement created an ownership interest in Holcomb which attached to the Tilton trust deed and the proceeds of the real estate

collateral and that FDIC/corporate had an obligation to Holcomb to make a *pro rata* distribution of the proceeds after foreclosure on the trust deed. The Federal court ruling necessarily meant that the obligations and rights under the participation agreement were transferred to FDIC/corporate along with the Tilton note in the purchase and assumption transaction.

■ Holcomb's petition for payment from receiver requests that the court deny FDIC/receiver the authority to sell or transfer the Tilton note or to impair Holcomb's rights. The Federal court proceedings determined that the transfer had already taken place, that the transfer had imposed obligations on FDIC/corporate, and that Holcomb's rights under the participation agreement were intact. Because the Federal court heard and adjudicated the issues of the transfer to FDIC/corporate and Holcomb's rights as against FDIC/corporate, pursuant to that transfer, Holcomb is collaterally estopped from relitigating those issues in State court.

Holcomb also requested in its petition for payment, and argues in its brief, that it has a right to repayment of the participation from the money FDIC/corporate paid to FDIC/receiver upon transfer of the substandard loans. It does not appear from the Federal court records whether this specific issue was presented and adjudicated in the Federal court proceeding, so collateral estoppel will not be applied to bar this issue.

Holcomb contends that the $4 million payment from FDIC/corporate to FDIC/receiver for the transfer of the substandard loans constitutes payment on the loan and consequently Holcomb has a right to share in the $4 million to the extent of its participation. Apparently, Holcomb identifies the $4 million as a payment of principal on the substandard loans. Holcomb is incorrect.

■ The payment by FDIC/corporate to FDIC/receiver cannot in any sense be considered a payment of principal which would trigger Holcomb's right to repayment. The $4 million paid by FDIC/corporate represented the amount necessary to balance the assets acquired by the assuming bank against the deposits and other liabilities it acquired. (*FDIC v. Matheson* (5th Cir. 1986), 804 F.2d 1382, 1383 n.1.) The amount paid bears no relationship to the actual value of the substandard loans purchased. Furthermore, the payment did not remain with the receiver but was paid over to the assuming bank to balance its new assets and liabilities.

■ Principal is defined as an amount of debt. (Black's Law Dictionary 1073 (5th ed. 1979).) Common sense dictates, therefore, that to constitute a payment of principal, a payment must necessarily re-

duce the balance due on the debt. Holcomb offers no evidence that this occurred here.

That FDIC/receiver transferred the loan to FDIC/corporate for cash does not mean that a principal payment was made. Financial institutions frequently sell negotiable instruments, but such sales do not affect the balance due on the debts or act to discharge the debts in any sense. *Rovak v. Parkside Veterans' Homes Project, Inc.* (1956), 8 Ill. App. 2d 310, 316, 132 N.E.2d 11.

■ Furthermore, Holcomb did not have a general claim against the assets of Rochelle Bank. It had an interest only in a specific fund, payments of principal or proceeds of collateral on the Tilton note. Holcomb presents no evidence which would identify any part of the $4 million as a fund to which its interest attaches. Without such an identification of funds, Holcomb has not established its right to any part of the $4 million payment. See *FDIC v. Mademoiselle of California* (9th Cir. 1967), 379 F.2d 660, 665.

■ Clearly then, no part of the $4 million FDIC/corporate payment can be considered a payment on the Tilton loan principal. Thus, Holcomb has no right to share in the $4 million. Holcomb's right to repayment arose only in the events of payment of principal or foreclosure on the real estate collateral securing the Tilton note. No principal payment was ever made. It is undisputed that the debtor never made a payment on principal, and we have determined that the FDIC payment was not a principal payment.

In this case Holcomb's only right to repayment arose when FDIC/corporate foreclosed on the real estate. Unfortunately, the foreclosure sale resulted in a deficiency. Although our decision here means that Holcomb will not recoup any part of its $40,000 participation, Holcomb was bound by the terms of the agreement it made for itself with Rochelle Bank.

Finally, Holcomb contends that summary judgment was improperly granted in this case because the trial judge erroneously assumed facts which were not before the court. Holcomb contends that the court erred in assuming (1) that FDIC/corporate did not make a principal or interest payment to reduce the balance due under the note and (2) the purchase and assumption transaction did not constitute a payment of the note or result in any amount realized from the collateral. Holcomb's contention is incorrect.

■ These "facts" that Holcomb finds fault with are not facts but are legal conclusions as to the effect and application of the money FDIC/corporate paid to FDIC/receiver in consideration of the transfer of the substandard loans. These conclusions were drawn from the un-

contested facts the parties presented. Summary judgment based on those legal conclusions was proper.

Respondent FDIC has filed a motion with this court pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) (Code) for attorney fees and expenses incurred in defending this appeal and responding to Holcomb's petition in the trial court. The motion contends that both the petition and the instant appeal are frivolous. Respondent did not file a section 2—611 motion in the trial court.

■ With regard to respondent's request for fees and expenses incurred in responding to Holcomb's petition in the circuit court, matters which are not raised in the trial court may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) We realize there is precedent for the consideration of such requests when they were made for the first time in the appellate court. (See *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 614, 505 N.E.2d 387, 393; *Brooks v. Goins* (1967), 81 Ill. App. 2d 12, 21-22, 225 N.E.2d 707, 712.) The motion for sanctions in *Brooks* was brought pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1963, ch. 110, par. 41), the predecessor to section 2—611 of the Code. The court stated that since section 41 motions had to be brought within 30 days of a final judgment (*Eugene Matanky & Associates, Inc. v. Onixt* (1966), 74 Ill. App. 2d 53, 55, 219 N.E.2d 865, 867) and defendant's notice of appeal was filed five days after judgment, plaintiff's opportunity to file a section 41 motion was cut short. *Brooks,* 81 Ill. App. 2d at 21-22, 225 N.E.2d at 712.

■ This court recently held that section 2—611 motions must be filed within 30 days of entry of judgment. (*Herman v. Fitzgerald* (1989), 178 Ill. App. 3d 865, 869.) In the case at bar, Holcomb's notice of appeal was filed on January 4, 1988, which was the deadline for the FDIC to file a section 2—611 motion under our holding in *Herman.* Thus, unlike *Brooks,* the period for filing a section 2—611 motion was not cut short by the filing of a notice of appeal. Since the FDIC failed to seek sanctions in the trial court relating to its defense of Holcomb's petition, when it had a full and complete opportunity to do so, it has waived this matter on appeal.

■ We must now consider whether this court has the authority to impose sanctions pursuant to section 2—611 as a result of frivolous appeals or frivolous contentions raised on appeal. In *Darnall v. City of Monticello* (1988), 168 Ill. App. 3d 552, 522 N.E.2d 837, the Appellate Court for the Fourth District held that it did not have such au-

thority. (*Darnall*, 168 Ill. App. 3d at 557, 522 N.E.2d at 840-41.) The court stated that section 2—611 is found in the portion of the Code dealing with pleadings and does not concern appellate court procedure. (168 Ill. App. 3d at 557, 522 N.E.2d at 840.) The court further stated that under article VI of the Illinois Constitution, our supreme court has the exclusive authority to regulate procedure in the appellate court. (168 Ill. App. 3d at 557, 522 N.E.2d at 840.) Since there is no supreme court rule authorizing awards of fees and costs by appellate courts as a result of frivolous appeals, the court denied defendant's motion for sanctions. 168 Ill. App. 3d at 557, 522 N.E.2d at 840-41.

The Illinois Constitution states that "[t]he Supreme Court shall provide by rule for expeditious and inexpensive appeals." (Ill. Const. 1970, art. VI, §16.) The *Darnall* court apparently relied upon this language in determining that only our supreme court and not the legislature could authorize appellate courts to award sanctions for frivolous appeals. Furthermore, we take note that while Supreme Court Rule 1 (107 Ill. 2d R. 1) states that civil trial court proceedings shall be governed by the rules on trial court proceedings together with the Civil Practice Law, with regard to appeals the rule merely states that "[t]he rules on appeals shall govern all appeals." While Rule 1 indicates that the legislature and the supreme court have concurrent authority to regulate trial court procedure, it provides further support for the conclusion of the *Darnall* court that the supreme court has the exclusive authority to regulate appellate procedure.

This court has very recently adopted the *Darnall* holding that appellate courts do not have the authority to impose sanctions for frivolous appeals or frivolous contentions on appeal. (See *Wiley v. Howard* (1989), 180 Ill. App. 3d 721, 724-25.) We see no reason to reevaluate our holding in *Wiley*. Accordingly, since we do not have the authority to award sanctions for unwarranted appeals, the FDIC's motion must be denied.

The judgment of the circuit court of Ogle County is affirmed, and respondent's motion for sanctions is denied.

Affirmed.

LINDBERG and NASH, JJ., concur.