FINE ARTS DISTRIBUTORS *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* HILTON HOTEL CORPORATION *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)    No. 79-2265

Opinion filed October 21, 1980.

Gary Tucker, of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Thomas L. Browne, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Stanley Tucker, doing business as Fine Arts Distributors, appeals from an order dismissing with prejudice his cause of action

against Hilton Hotel Corporation and two other defendants. The trial court dismissed plaintiff's action under Supreme Court Rule 219(c) as a sanction for plaintiff's noncompliance with both the court's order for discovery and defendants' notices of deposition. (Ill. Rev. Stat. 1979, ch. 110A, par. 219(c).) *Defendants cross-appeal an earlier order of the trial court, also a discovery sanction under Rule 219(c), barring the testimony of defendant Paul Gaeta.*

Fine Arts Distributors is a sole proprietorship owned by Stanley Tucker. Fine Arts formerly rented space in the lobby of the Arlington Park Hilton Hotel to display and sell art objects. Disputes arose between Fine Arts and the management of the hotel, and Fine Arts filed suit against Hilton Hotel Corporation, the Arlington Park Hilton Hotel, and Paul Gaeta, then manager of the Arlington Park Hilton.

As amended, plaintiff's complaint alleged a breach of contract and defendants' interference with Fine Arts' contractual relationships. Since plaintiff's claimed injuries involved the loss of profits, defendants sought to discover Fine Arts' financial records and Stanley Tucker's income tax returns. Defendants first requested these items on February 22 and March 17 of 1977. In response to these requests, Fine Arts produced records of its net sales (gross sales less sales tax). Defendants already had this information, since net sales were reported to the hotel regularly and formed the basis for calculating the monthly rent charged. Defendants demanded more detailed financial statements and, receiving no cooperation, obtained on May 20, 1977, a court order to produce certain statements. This order required, by September 1, 1977, a detailed profit and loss breakdown for 1974 and 1975, an affidavit that there were no professionally prepared financial records, Stanley Tucker's income tax returns for 1974 through 1976, and an affidavit that plaintiff is not withholding any pertinent financial records. Several weeks after the September 1 deadline, and after defendants' threat of sanctions, plaintiff produced some financial records, but no tax returns and no affidavits. Plaintiff claims that the tax returns were delivered to defendants' attorney's office on November 4, 1977. Defendants deny knowledge of any such delivery. On November 18, 1977, defendants' attorney wrote plaintiff and complained of the inadequacy of the financial records received; this letter made no reference to the still outstanding income tax returns. Plaintiff thereafter (on December 5, 1977) provided some additional information, but no communications dealing with the missing tax returns or affidavits passed between the parties until March 15, 1979, when defendants renewed their demand for the tax returns.

Similar difficulties attended defendants' attempts to depose Stanley Tucker, Jack Mueller (Fine Arts' employee at the Arlington Park location), and Gary Tucker, plaintiff's attorney. Defendants served notice of

intent to take depositions on March 22, 1977. These depositions, scheduled for April 26, 1977, were cancelled when plaintiff's attorney phoned defendants' attorney on April 26 and said the date was inconvenient. He refused to suggest an alternate date. Defendants made several more attempts to schedule the depositions. On March 26, 1979, defendants' attorney phoned plaintiff's attorney to confirm that depositions scheduled for that day would be taken, and found that plaintiff's attorney was out of town. At a later scheduled date (April 13, 1979), the three individuals to be deposed simply failed to appear.

As with the discovery of documents, the record shows that defendants did not maintain a constant pursuit of the requested depositions. Between August 1977 and March 1979, the record shows no renewed demand to depose these individuals. During this 18-month gap, plaintiff attempted to depose Paul Gaeta. On July 14, 1978, plaintiff served a notice of deposition. Delay in the deposing of Gaeta is more easily explained than the delay attending defendants' attempted depositions, since Gaeta was no longer employed by Hilton Hotels and was out of the State. Gaeta's whereabouts remained unknown until January 1979, when defendants' attorney finally located him in New Orleans. A deposition was scheduled for February 21, 1979, in Chicago, but Gaeta's employer refused to give Gaeta any time off until late March. On March 7, 1979, the trial court entered an order barring Gaeta's testimony as a defense witness.

On April 20, 1979, plaintiff had still not produced the tax returns and affidavits ordered by the court on May 20, 1977, and had not yet offered the three subjects for deposition. Defendants moved to dismiss plaintiff's cause as a discovery sanction under Supreme Court Rule 219(c), which motion was granted by the trial court on May 18, 1979. Plaintiff thereafter motioned the trial court to vacate the order. After a hearing on October 10, 1979, this motion was denied, and plaintiff appealed.

■■■ The imposition of sanctions under Supreme Court Rule 219(c) is a matter within the discretion of the trial court, and the reviewing court will uphold the trial court's decision, absent an abuse of discretion. (*Sanchez v. Phillips* (1977), 46 Ill. App. 3d 430, 434-35, 361 N.E.2d 36.) That discretion should be afforded considerable deference, since the trial court is in the best position to determine whether a party's conduct amounts to deliberate or contumacious flouting of judicial authority. Additionally, the nature of the decision called for urges respect for the ruling below, in that the trial court is required to balance competing considerations. On the one hand, it is clear that the purpose of sanctions is to accomplish the object of discovery, and not to punish recalcitrant litigants. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 196, 226 N.E.2d 6.) At the same time, courts have an interest in promoting

the unimpeded flow of litigation, which requires that careful attention be paid to the prompt and orderly handling of discovery. "Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460.) By serving notice that discovery is a serious phase of litigation and not an exercise in tactics, sanctions promote the flow of litigation and preserve the court's role in expediting that flow. (See also *Savitch v. Allman* (1975), 25 Ill. App. 3d 864, 868, 323 N.E.2d 435.) We must emphasize at this point that the discovery process is subject to the authority of the trial court precisely because it is such an integral part of judicial proceedings. (See generally *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 606, 386 N.E.2d 398.) For this reason, any attempt by counsel to use discovery for strategic delay or calculated misinformation corrupts the truth-seeking process and must be sternly rebuked.

Nonetheless, dismissal of an action is a drastic sanction, and should only be imposed when the plaintiff's conduct amounts to contumacious disregard of the court's authority. (*Sanchez,* at 435.) The record in the instant case supports such a finding. Defendants' motion to dismiss was made on April 20, 1979, and ruled on four weeks later. During this interval, plaintiff made no attempt to advance the discovery process or redeem his prior noncooperation. Not until October 10, 1979, at the hearing on plaintiff's motion to vacate the order of dismissal, did defendant indicate a willingness to tender the income tax returns. Even at that time, the record shows no offer to make the three individuals available for deposition, and no tender of the ordered affidavits.

■■ The burden of proving extenuating circumstances causing discovery delays falls on the non-complying party. (*Savitch,* at 869.) Here, plaintiff offers excuses for the failure of his witnesses to attend the scheduled depositions, but these explanations, which are for the most part trivial and unsatisfactory, were first offered on October 10, 1979. None was given at the time of plaintiff's derelictions. In one instance, plaintiff charges that the timing of a scheduled deposition amounted to harassment. We do not find any credible evidence of harassment in defendants' discovery procedures, but even if defendants' demands were improper, plaintiff's lack of cooperation would not be excused. The correct remedy for improper discovery procedures is to seek a protective order under Supreme Court Rule 201(c). *Payne,* at 606-07.

Plaintiff now seeks to lay the blame for discovery delay at the feet of defendants. In particular, plaintiff says that defendants' attorney's letter of November 18, 1977, two weeks after the purported delivery of the tax returns, should have renewed defendants' demand for these documents, and thus notified plaintiff that the delivery was incomplete. We note that

plaintiff never even asserted an attempted delivery until the motion of October 10, 1979, and never undertook to explain or describe the alleged delivery, except to say that the unnamed deliveryman is no longer in plaintiff's attorney's employ.

Nevertheless, defendants' laggard pursuit of discovery in this case is indicated by the total absence of activity regarding the withheld information during 1978. Plaintiff errs, however, in the importance he attaches to defendants' sluggishness. As the sanction of dismissal is not a punishment for the misbehaving plaintiff (see *People ex rel. General Motors v. Bua*, at 196), neither is it a reward for the conscientious defendant. The fact that another party's laxity merits disapproval should not be a factor in determining sanctions, the purpose of which is the furthering of the litigation process.

■■ In the instant case, plaintiff's numerous long delays, in the face of reasonable requests and a court order, combined with his persistent failure to explain those delays satisfactorily and his continuing refusal to remedy fully his noncooperation, amount to contumacious behavior, and justify the trial court's dismissal of the action. Even though plaintiff's October 10, 1979, motion finally made an attempt to explain his actions, and offered partial compliance, the trial court can properly deny such a motion unless the plaintiff offers a reasonable excuse for his failures, and shows that the other party has not been prejudiced. See *Big Three Food & Liquor, Inc. v. State Farm Fire & Casualty Co.* (1979), 79 Ill. App. 3d 63, 68, 398 N.E.2d 264.

In view of our affirmance of the trial court's dismissal of plaintiff's action, defendants' cross-appeal (seeking to reverse an order of the trial court barring the testimony of Paul Gaeta) is moot. For this reason, we do not reach the merits of defendants' cross-appeal. (See *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379, 121 N.E.2d 486.) The decision of the trial court is affirmed, and the cross-appeal is dismissed.

Affirmed; cross-appeal dismissed.

DOWNING and HARTMAN, JJ., concur.