DIANE HARRIS, Petitioner-Appellant, v. RICHARD HARRIS, Respondent (Seymour Regal *et al.*, Appellees).

First District (3rd Division)   No. 1—88—2500

Opinion filed April 4, 1990.

816

Michael S. Schiffman and James F. Driscoll, both of Driscoll & Driscoll, of Schaumburg, for appellant.

Gerald D. Chiss and Elliott D. Hartstein, both of Cohon, Raizes & Regal, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Petitioner, Diane Harris, appeals an order of the trial court striking her pleadings and entering a judgment of default. 107 Ill. 2d R. 219(c).

In 1980, petitioner retained Seymour Regal and the law firm of Cohen, Raizes & Regal to represent her in a dissolution of marriage. In 1985, petitioner retained new counsel. Shortly thereafter, Regal filed a petition for attorney fees and costs.

On December 22, 1986, Regal filed a notice of deposition, scheduling petitioner's discovery deposition for January 6, 1987, and requesting the production of certain documents on or before January 2. Petitioner's attorney (Driscoll) advised Regal that January 6 was not a convenient date and agreed to provide him with an alternative. The fee petition hearing was scheduled for February 4, 1987.

In compliance with Supreme Court Rule 201(k) (107 Ill. 2d R. 201(k)), on January 16, Regal wrote a letter to petitioner's attorney, reminding him of the hearing date and of the fact that he was to contact him with an alternate date for the deposition. Regal sent a second letter on February 5, wherein he informed petitioner that the hearing had been continued to April 7 and that petitioner had still not contacted him to reschedule the deposition.

By agreement of the parties, the deposition was rescheduled for March 18; however, according to Regal, petitioner had not agreed to produce the documents. On March 11, Regal filed a motion to compel production of documents. Contrary to Regal's statement in his brief, petitioner filed a response to the motion.

In response to the motion, the court ordered petitioner to appear for the deposition on April 16 and continued the fee hearing to April 24. A second order, entered on March 23, ordered petitioner to comply with the request to produce, on or before April 9. Petitioner did not produce the documents, nor did she appear for the April 16 deposition.

On April 20, Regal filed a motion for remedies for failure to comply with orders and rules. In response to the motion, petitioner was ordered to produce all documents not later than 12 noon the following day and to appear for the deposition on April 23, 1987. The trial court rejected petitioner's argument that Regal already had the requested documents as a result of his representation of her in the dissolution case. (Kathleen Rice, another attorney in Driscoll's firm, appeared at the motion in Driscoll's stead.)

On April 21, petitioner's attorney, Driscoll, filed an emergency motion to reconsider the April 20 order. At the hearing on the mo-

tion, petitioner's attorney alleged that petitioner would not be able to attend the April 23 deposition because, due to back problems, she had been bedridden since the early part of April. Petitioner's attorney offered to produce, for the court and Regal, an affidavit from petitioner's doctor attesting her illness and expected date of recovery. Regal rejected the court's suggestion that the deposition be taken in petitioner's home. The court then ordered that the date of the deposition would be set pending the production of the medical affidavit. No date was set for compliance with the order to produce the affidavit.

On April 24, the court conducted a hearing on Regal's April 20 motion for sanctions. The court awarded Regal attorney fees and costs as a sanction for petitioner's noncompliance with discovery orders.

As of June 3, petitioner had not filed the affidavit, nor had she paid the previously ordered attorney fees. Regal filed another motion seeking additional remedies for noncompliance. Petitioner requested, and was granted, 14 days to respond; however, no response was filed. At the July hearing on the motion, petitioner handed Regal some documents. Regal stated that while he recognized some of the documents as those having been generated in his office in connection with the dissolution action, he was not familiar with others and could not tell whether all of the documents requested were included.

In opposition to the motion, petitioner argued that she had produced most of the records requested. Additionally, petitioner argued that the April 24 sanction had not been paid because she intended to appeal it. She further argued that she had not been ordered to produce an affidavit and that she had told the court that the deposition could be taken at her home. Petitioner's attorney then offered to produce petitioner for a deposition.

The court stated that it would take the motion under advisement and remarked that it was disappointed that petitioner had not complied with any of the orders. On August 7, in response to Regal's June 3 motion, the trial court ordered petitioner's pleadings be stricken and entered a judgment of default. (107 Ill. 2d R. 219(c).) Petitioner's October 7 motion to reconsider sanctions was denied, and this appeal followed. We affirm.

■■ ■ Discovery rules establish guidelines for a fair and orderly procedure whereby discovery and full disclosure may be accomplished. The rules permit the imposition of sanctions upon a party deemed by the trial court to have abused or disregarded discovery rules and procedures. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 910, 513 N.E.2d 958.) The appropriate sanction

for a party's noncompliance with discovery rules is a matter within the broad discretion of the trial court, and absent an abuse of that discretion, its decision will not be disturbed on appeal. (*King*, 160 Ill. App. 3d at 910; *In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, 469 N.E.2d 410.) Supreme Court Rule 219(c) authorizes the trial court to enter such orders as are just, including, among others, "that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice; or that any portion of his pleadings relating to that issue be stricken." 107 Ill. 2d R. 219(c).

Petitioner's first contention on appeal is that the trial court abused its discretion in imposing the sanctions. She urges four points in support thereof. Petitioner's arguments lack merit.

She first argues that the sanctions were improperly punitive. Relying on *Hardware Wholesalers, Inc. v. Clemenic* (1984), 124 Ill. App. 3d 304, 464 N.E.2d 700, she asserts that courts may not invoke sanctions which are purely punitive, but must do so only to achieve the objects of discovery. As evidence of the punitive nature of the sanctions, petitioner points out that at the July 21 hearing on the motion for sanctions she had produced all of the requested documents and had offered to be available for the deposition at any time in the future.

■■ While it is clear that the purpose of sanctions is to accomplish the goal of discovery, at the same time, courts have an interest in promoting the unimpeded flow of litigation. This naturally requires that careful attention be paid to the prompt and orderly handling of discovery. (*Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 884, 412 N.E.2d 608.) "Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460.

Illinois courts are becoming less tolerant of violations of discovery rules, even at the expense of a case being decided on the basis of the sanction imposed, rather than on the merits of the litigation. In *Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 505 N.E.2d 694, the court ordered defendant to produce documents on two separate occasions. Defendant agreed to comply; however, he produced no documents. Upon plaintiff's motion, the court struck the defendant's pleadings and entered a default judgment. See also *Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002, 455 N.E.2d 876 (failure to comply with orders to appear for discovery deposition resulted in strik-

ing of defendant's counterclaim and judgment on issue of liability); *Campen v. Executive House Hotel* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511 (failure to disclose name of witness in interrogatories resulted in exclusion of four defense witnesses and jury instructed on unfavorable inference to be drawn from withheld evidence).

■ We believe that petitioner's production of the documents and her offer to appear for her deposition came much too late. By the time of the July 21 hearing, in addition to the original date which had been set by Regal, and the second date which had been agreed upon by the parties, petitioner had been twice ordered to appear for her deposition. Further, any attempt to reschedule the deposition for yet a fifth time was thwarted by petitioner's failure to produce the affidavit from her physician. We note that a copy of a letter from Dr. Robbins, petitioner's treating physician, was finally produced. The letter, dated October 1, 1987, states that petitioner was confined to bed in April. With the exception of the excuse of illness, petitioner offered no other for her failure to appear for her scheduled depositions.

■ ■ Petitioner's second argument is that her conduct was neither deliberate nor contumacious so as to warrant the sanction. She maintains that throughout the proceedings there remained a good-faith dispute concerning the scope of discovery and that she objected to the production of certain documents.

The record reveals that there was, in fact, a dispute over the scope of discovery regarding the production of documents. In March 1986, the parties agreed to formulate certain stipulations which would obviate the need for production. Unable to agree on the stipulations, petitioner stated that she would seek a ruling from the court as to the scope of discovery. (107 Ill. 2d R. 201(c).) We find no evidence in the record that she ever sought such an order.

At the April 21 hearing on Regal's motion, after clarification of what documents were being requested, petitioner stated that she would comply. Yet, no documents were produced until July. Even if Regal's request had been improper or objectionable, this would not excuse petitioner's lack of cooperation. (*Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 884, 412 N.E.2d 608; *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 386 N.E.2d 398.) The correct remedy for improper discovery procedure, as petitioner was apparently aware, is to seek a protective order. 107 Ill. 2d R. 201(c).

Petitioner also argues that as a result of Regal's representation of her, he already had in his possession most of the requested docu-

ments. Without deciding the propriety of Regal's request, we believe that many of the documents requested would not have been in his possession at the time of his request. Several of the documents requested were for dates beginning in 1983 through the date of production. Regal would not have had any documents past the time of his representation of petitioner.

Petitioner's reliance on *Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 485 N.E.2d 531, is misplaced. In *Jaffe*, the defendant had been ordered, on three separate occasions, to appear at his deposition. The defendant either failed to appear or, if he did so, he refused to answer any questions on grounds of self-incrimination. Summary judgment was entered against him.

On appeal, the reviewing court stated that while the trial court had not indicated that summary judgment was imposed as a discovery sanction, had it done so, the sanction would have been too harsh. The court advocated a progression in the severity of discovery sanctions, and it noted that the record gave no indication that a less severe sanction had first been attempted or that it would have been fruitless. (137 Ill. App. 3d 961.) The court reasoned that by imposing progressively harsher sanctions, it could retain flexibility to force compliance with discovery.

Unlike in *Jaffe*, entry of the default judgment here was not the first sanction imposed. Here, the court had previously, and to no avail, assessed attorney fees and costs against petitioner. The court's imposition of the second, more severe sanctions of entering a default judgment and striking petitioner's pleadings is consistent with the reasoning in *Jaffe*.

Petitioner's third argument is that the court should have imposed a less severe sanction, if any at all. She maintains that the first sanction, which awarded Regal attorney fees, served its purpose because, as of June 3, 1987, she had produced most of the requested documents and, as of July 21, she had fully complied with the request.

Petitioner relies on *Hardware Wholesalers* (124 Ill. App. 3d 304), to argue that the sanctions here were too harsh. In *Hardware Wholesalers*, the defendant had failed to appear for his deposition on numerous occasions and had been dilatory in complying with discovery. Upon the plaintiff's motion for sanctions, the trial court struck and dismissed defendant's pleadings and entered judgment for the plaintiff. In reversing, the appellate court stated that the record did not show that the defendant's failure to appear for the scheduled depositions was intentional, and that defendant's conduct did not approach the deliberate and contumacious disregard of the courts' au-

thority required to uphold such a drastic sanction. The court suggested that a less severe sanction might have been appropriate, with the drastic, more severe measure of the default judgment if the defendant subsequently acted in a similar manner.

Compliance with the order required more than the production of most of the documents. It is apparent that petitioner presented the documents at the last possible moment and only in hopes of escaping the default sanction. The record here belies any argument that petitioner's conduct was anything but deliberate and in direct defiance of the court's orders. Moreover, in *Hardware Wholesalers*, as in *Jaffe*, entry of the default and summary judgment were the first sanctions imposed. Here, the trial court's imposition of the second sanction echoes the logic of *Hardware Wholesalers* and *Jaffe*.

Petitioner's fourth argument is that the trial court should have set aside its sanctions and had a trial on the merits. Relying on *Hardware Wholesalers* and *Humboldt-Armitage Corp. v. Illinois Fair Plan Association* (1980), 86 Ill. App. 3d 888, 408 N.E.2d 307, she states that a default should be set aside when a trial on the merits may be held without visiting hardship or prejudice upon the parties. She argues that since there was no harm to Regal, a trial on the merits was appropriate.

■ Where the trial court imposes a sanction for noncompliance pursuant to Rule 219(c), the offending party has the burden of establishing, by affidavit or otherwise, that his failure to comply with the court's discovery order was justified by extenuating circumstances. (*Humboldt-Armitage*, 86 Ill. App. 3d at 890; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.) In order to justify setting aside the default order, the offender must show a willingness to comply with discovery orders in the future. *Hall v. Jacobs, Camodeca & Timpone* (1985), 134 Ill. App. 3d 516, 521, 481 N.E.2d 5.

■ Petitioner correctly argues that prejudice to the opposing party is a factor to be considered in determining the appropriateness of a sanction. (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 369, 459 N.E.2d 940, citing *Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 132, 298 N.E.2d 233.) However, prejudice is not the sole consideration. As is apparent from *Jaffe* and *Hardware Wholesalers*, consideration may also be given to whether this was only one or many failures to comply with orders. Additionally, consideration may be given to the nature of the excuse tendered for the noncompliance. Compare *Lohja v. Checker Taxi Co.* (1980), 92 Ill. App. 3d 491, 416 N.E.2d 32; *Presbyterian-St. Luke's-Hospital v. Feil* (1979), 75 Ill.

App. 3d 438, 394 N.E.2d 537.

Despite petitioner's flagrant disregard of the court's orders and the unwarranted delay, frustration and expense she caused Regal, she asks this court to condone her conduct. We cannot. In our review, we are mindful that petitioner's conduct was not a one-time occurrence, but rather, a repeated indifference to the court's orders. Further, we are not persuaded, based on this record, that petitioner had any legitimate reasons for not complying with the discovery orders.

In light of petitioner's continued noncompliance after the imposition of the first sanction, we are not convinced, nor should the trial court have been, that her conduct would have been different in the future. The record here wholly supports the trial court's findings and reveals a pronounced pattern of deliberate and blatant disregard of discovery rules. (*Valdivia v. Chicago & North Western Transportation Co.* (1980), 87 Ill. App. 3d 1123, 409 N.E.2d 457.) The trial court's order striking petitioner's pleadings and entering a default against her will stand.

Before leaving this contention, we address, briefly, Regal's response that no default judgment was entered. He maintains that only petitioner's pleadings were struck and that the case was "heard as in cases of default." We have examined cases wherein, pursuant to Rule 219(c), a default judgment was entered as a discovery sanction. The effect, in each case, was the admission of liability, and a trial on the issue of damages only. (See *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119; *Strickler v. McCarthy* (1965), 64 Ill. App. 2d 1, 212 N.E.2d 723, *aff'd in part & rev'd in part* (1967), 37 Ill. 2d 48, 224 N.E.2d 827; *Smith v. Dunaway* (1966), 77 Ill. App. 2d 1, 221 N.E.2d 665.) Even though the court here did not expressly state that it was entering a default judgment, that was, nonetheless, the effect of its order, which under the rule and case law was proper.

Petitioner's second contention on appeal is that the trial court abused its discretion in awarding Regal attorney fees because he conducted himself in an unethical manner. She urges two points in support of this contention.

She first argues that Regal breached his fiduciary duty to her by creating a conflict of interest. She asks this court to deduct the fees awarded for the period of time that the conflict existed. Specifically, in April 1982, Regal filed his appearance as the attorney for Duane Quaini, a partner in the law firm of petitioner's husband. For a period of time, Regal was simultaneously representing Quaini and peti-

tioner in their respective dissolution cases. As petitioner's attorney, Regal was charged with obtaining full disclosure of all partnership assets and maximizing their valuation. However, Quaini's interests were best served by limiting disclosure of partnership information and minimizing all valuations. Petitioner maintains that the conflict of interest is highlighted by the protective order which was entered to protect Quaini's interest and the interest of the law firm. She concludes that if Regal used financial information obtained from Quaini in his representation of her, he would have breached his duty to Quaini, and if he failed to do so, then he failed to represent her fairly.

Regal counters that the claimed conflict of interest charge is baseless. He maintains that petitioner was fully aware of his representation of Quaini and that she consented thereto. Further, he testified that information gained in one case was not shared in the other. In the alternative, he asserts that since breach of fiduciary duty was an affirmative defense and was not raised below, it is waived.

■■ Ordinarily, a party will not be permitted to argue on appeal a defense not interposed by his answer. The fact that certain evidence lends support to the defense does not mitigate the force of this rule. In any action before the trial court, "[t]he proof presented is determined largely by the pleadings, the issues, and the theories there made." (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 138, 213 N.E.2d 89.) However, the rule regarding waiver is not a limitation on the reviewing court's jurisdiction, but is, instead, an admonition to the parties. (*Siebach v. Pienta* (1978), 60 Ill. App. 3d 645, 377 N.E.2d 393.) Moreover, where a defendant fails to plead a defense and subsequently raises it at trial, waiver of the defense is waived by the plaintiff's failure to object. See *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 953, 369 N.E.2d 1363 (failure to plead *res judicata* waived when plaintiff failed to object when raised by defendant at trial).

At the hearing on damages, petitioner posed several questions to both Regal and his expert on the issue of conflict of interest. Regal voiced no objection. Although petitioner did not plead conflict of interest in her answer, that failure was waived by Regal's failure to object when the issue was raised at the hearing.[1]

---

[1]We have found no cases which directly address the effect that the striking of an answer has on affirmative defenses pleaded therein. Under the Federal Rules of Civil Procedure, ordinarily, a portion of an answer setting up an affirmative defense requiring proof, and which if sustained, would be a defense, could not be reached by a motion to strike. See 35A C.J.S. *Federal Civil Procedure* §425 (1960).

■■■ Petitioner maintains that under the rule in *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67, where there is a *per se* conflict of interest, allegations and proof of prejudice are unnecessary. The *per se* conflict of interest rule was adopted in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, and has been applied to those cases wherein the defense counsel has had a prior or contemporaneous association with either the prosecution or the victim. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 14, 525 N.E.2d 30, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) The *Spreitzer* court cites to the following case examples as *per se* conflict of interest: *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393, *cert. denied* (1984), 469 U.S. 1022, 83 L. Ed. 2d 367, 105 S. Ct. 442 (defense attorney simultaneously served as a part-time attorney for the municipality where the defendant was being prosecuted); *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345 (defense attorney simultaneously served as a special assistant Attorney General handling unemployment compensation cases for the State on a part-time basis); and *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441 (defense attorney and his firm simultaneously represented the defendant, the corporation whose store had been burglarized and the store's owner). Contrary to petitioner's recitation of the *per se* rule, allegations and proof of prejudice are unnecessary only in cases where the defendant has not given knowledgeable assent. *Stoval*, 40 Ill. 2d at 113.

In order for us to find that there was a *per se* conflict of interest, we must find that petitioner did not consent to the representation. Petitioner argues that, but for the entry of the default judgment, she could have testified and she would have denied that she had given consent. Petitioner's claim of precluded testimony is not born out by the record.

We have reviewed that portion of the record wherein the parties presented arguments to the court concerning petitioner's right to present evidence. Petitioner offered the testimony of George Feiwell. In response, Regal argued that under some case law, where a default has been entered, the defendant had the right to cross-examine the plaintiff's witnesses, but he could not bring in witnesses of his own. Regal also advised the court that there was case law which made it discretionary with the court whether to permit the plaintiff to call witnesses. Petitioner responded that she understood that she would not be allowed to present evidence; that she would only be permitted to cross-examine Regal's witnesses and to offer impeachment testimony. After hearing the arguments, the court concluded that peti-

tioner had a right to be heard on the issue of damages.

It appears from the record that petitioner was not precluded from presenting testimony on the issue of damages. Her attorney never offered her (petitioner's) testimony. Petitioner presented one witness, George Feiwell. She had the right to present whatever evidence she had in contravention to Regal's claims on the issue of damages. Petitioner will not be heard to complain about precluded evidence which she never offered.

Petitioner places great reliance on *Skokie Gold Standard Liquors, Inc. v. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804, in support of her *per se* conflict argument. *Skokie* is not a *per se* conflict case. It involved the propriety of the disqualification of an attorney for alleged violations of Canons 4 (the preservation of client confidences and secrets) and 9 (the avoidance of the appearance of impropriety) of the Illinois Code of Professional Responsibility (107 Ill. 2d Canon 4, Canon 9). (116 Ill. App. 3d at 1046.) The issue before the *Skokie* court was whether there was a substantial relationship between the subject matter of the former representation and that of the subsequent adverse representation which would require disqualification.

Petitioner quotes language from *Skokie* which states that "any doubt as to the existence of a conflict [must be] resolved in favor of disqualification." (116 Ill. App. 3d at 1057-58.) She relies on this language to support her conflict *per se* argument. Read in its proper context, it is apparent that the court there was not dealing with the *per se* conflict rule. Rather, the court was expounding on the rules established by the Federal courts with regard to the disqualification of an attorney and the standard of proof required to rebut the presumption that confidences of the former client had been shared by the attorneys. The court, citing *La Salle National Bank v. County of Lake* (7th Cir. 1983), 703 F.2d 252, stated that in the interest of avoiding the appearance of impropriety, the attorney against whom disqualification is sought has a strict burden of proof, and therefore, any doubts should be resolved in favor of his disqualification. *Skokie*, 116 Ill. App. 3d at 1057-58.

■■ Generally, unless the conflict is so clear as to be undisputed, expert testimony is necessary to prove attorney malpractice. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 831, 413 N.E.2d 1299.) Here, petitioner questioned Regal and Regal's expert on the issue of the conflict. Both testified that no conflict was presented as a result of the simultaneous representation. Petitioner presented no expert to rebut that

testimony. She failed to present any evidence which would prove that she was in any way prejudiced or that she was otherwise represented unfairly. We do not view the conflict here as being so clear as to render petitioner's presentation of evidence unnecessary.

Petitioner next argues that Regal's *ex parte* communication with Judge Jorzak was unethical. Regal testified that on February 24, 1986, he received a postcard from the clerk of the circuit court informing him that the Harris dissolution case had been dismissed for want of prosecution. After receiving the card, he telephoned the attorney for petitioner's husband and the firm of Feiwell, Galper, Laskey & Berger, who he "knew to be doing work on [petitioner's] case." On February 27, Regal went to Judge Jorzak's chambers, informed the judge that there had been no prior notice of dismissal in the law bulletin, and that the dismissal was erroneous. Judge Jorzak recognized the error and signed an order to reinstate the case and return it to the trial call.

According to Regal, at the time of the dismissal, he was still involved in petitioner's dissolution action, and he had not been told to discontinue answering court calls. Petitioner states in her brief that there is some dispute as to whether Regal was discharged from the case or whether her new counsel became co-counsel with Regal. A letter from Feiwell to Regal, dated January 1985, states that Feiwell had filed an additional appearance in the case.

Regal states that his meeting with Judge Jorzak was for the benefit of petitioner. He points out that at the time of the dismissal, petitioner's husband was under a court order to pay her maintenance. Had the action been dismissed, maintenance would have ceased.

Rule 17 of the circuit court of Cook County provides that a judge should not permit a lawyer to engage in *ex parte* communications, unless allowed by law, in connection with any matter pending before him. The judge may, with the express consent of all parties of record, communicate with fewer than all participants to promote settlement, for the purpose of scheduling or for any other similar purposes. (Cook County Cir. Ct. R. 17.1 *et seq.*) Supreme Court Rule 61(c) provides that a judge should not permit such communications designed to influence his judicial action.

We find unpersuasive petitioner's argument that Regal's intervention to vacate the dismissal was for the purpose of protecting his fee. Further, while we do not encourage *ex parte* communications, we do not believe that Regal's meeting with the judge was for the purpose of influencing his judicial action. Also, we agree with Regal that the logical party to have objected to the vacatur would have

been petitioner's husband, with whose attorney Regal stated that he had spoken. Finally, petitioner does not claim harm or prejudice to her as a result of the *ex parte* communication, and we find none.

The final issue before this court concerns Regal's request that we assess sanctions against petitioner for bringing this appeal. In his brief, he argues that by bringing this appeal, petitioner has violated section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) and Supreme Court Rule 137 (134 Ill. 2d R. 137). At oral argument, Regal stated that he was seeking sanctions pursuant to Supreme Court Rule 375 (134 Ill. 2d R. 375). Included in his list of violations are that (1) petitioner cited to no legal authority in support of her contention that there was a conflict of interest; (2) petitioner's statements in her brief that a default judgment was entered were false; (3) it is undisputed that petitioner was not in compliance with the discovery orders; and (4) petitioner had no proper basis for appealing on grounds which were never properly raised in the trial court. For the reasons stated below, we decline to grant Regal's request.

██ Without specifically addressing the merits of each of Regal's arguments, we note that section 2—611 is penal in nature and, as such, it must be strictly construed. (*Lee v. Egan* (1987), 160 Ill. App. 3d 1078, 1081, 513 N.E.2d 1023.) We do not believe that the conduct referred to by Regal is that which was contemplated by section 2—611 to punish. While we are ultimately unpersuaded by petitioner's arguments, we do not find them to have been totally devoid of merit or so contrary to existing law so as to warrant the imposition of sanctions. Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

Regal raises one other argument in support of his request for sanctions. He argues that petitioner has no basis to appeal the April 24 order for sanctions because she admitted that they were warranted. Review of the record reveals that petitioner did include the issue of the April 24 order in her notice of appeal. However, that issue is not argued in petitioner's brief, and, thus, it is not before this court on appeal. See generally *Svec v. Allstate Insurance Co.* (1977), 53 Ill. App. 3d 1033, 369 N.E.2d 205.

██ Even were we to find that petitioner's conduct fell within the purview of section 2—611, we would decline the imposition of sanctions. We note that there is a variance of opinion within the districts in Illinois as to whether section 2—611 confers authority on the appellate court to impose sanctions. The second, fourth and fifth districts have held that section 2—611 does not apply to appeals. (See *Holcomb State Bank v. Federal Deposit Insurance Corp.* (2d Dist.

1989), 180 Ill. App. 3d 840, 536 N.E.2d 453, but see *Manchester Insurance & Indemnity Co. v. Strom* (2d Dist. 1970), 122 Ill. App. 2d 183, 258 N.E.2d 150; *Darnall v. City of Monticello* (4th Dist. 1988), 168 Ill. App. 3d 552, 522 N.E.2d 837; *Dunaway v. Ashland Oil Co.* (5th Dist. 1989), 189 Ill. App. 3d 106, 544 N.E.2d 1313.) The third district has held that section 2—611 does apply to appeals. See *Fellows v. Miler* (3d Dist. 1986), 141 Ill. App. 3d 639, 490 N.E.2d 992; *McCormick v. Louis Joliet Bank & Trust Co.* (3d Dist. 1983), 114 Ill. App. 3d 205, 448 N.E.2d 905.

We, in the first district, have, in the past, held that section 2—611 applies to appeals. (See *Davis v. Chicago Housing Authority* (1988), 176 Ill. App. 3d 976, 531 N.E.2d 1018; *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995; *Aroonsakul v. Flanagan* (1987), 155 Ill. App. 3d 223, 507 N.E.2d 1; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 380 N.E.2d 873; *Schroeder v. Busenhart* (1971), 133 Ill. App. 2d 180, 272 N.E.2d 750, *cert. denied* (1972), 405 U.S. 1017, 31 L. Ed. 2d 479, 92 S. Ct. 1293.) However, in light of the recent promulgation of Supreme Court Rules 137 and 375, and the cases cited above, we now hold that section 2—611 confers no such authority on this court.

Rule 137, which became effective August 1, 1989, largely parallels section 2—611. It provides for the imposition of sanctions for pleadings which are not well grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that are interposed for any improper purpose. (134 Ill. 2d R. 137.) The committee comments following the rule state that the rule, which preempts section 2—611, authorizes the trial courts to impose certain sanctions for violations. Unlike section 2—611, Rule 137 allows, but does not require, the imposition of sanctions. Also, unlike section 2—611, Rule 137 requires a trial judge who imposes sanctions to set forth the reasons and basis of that sanction in a separate written order. 134 Ill. 2d R. 137 Committee Comments, at 131.

Power is vested in the supreme court, not the legislature, to issue rules regulating appeals. (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 65-66, 237 N.E.2d 495; *Wiley v. Howard* (1989), 180 Ill. App. 3d 721, 725, 536 N.E.2d 186.) Supreme Court Rule 1 provides, in pertinent part, that "[t]he rules on appeals shall govern all appeals." (107 Ill. 2d R. 1.) Where a rule on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail. *People v. Cox* (1980), 82 Ill. 2d 268, 274, 412 N.E.2d 541; *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602.

Section 2—611 of the Code of Civil Procedure does not address the applicability of sanctions by the appellate court. However, any attempt by the legislature to have section 2—611 apply to rules in the appellate court would have exceeded its authority and rendered the statute invalid. (See *Jackson*, 69 Ill. 2d at 259.) Further, it is apparent that a determination that section 2—611 confers authority upon the appellate court would create a conflict with Supreme Court Rule 137.

Our belief that section 2—611 does not confer authority upon this court is further enhanced by the supreme court's adoption of Rule 375, which specifically provides for sanctions for frivolous appeals. (134 Ill. 2d R. 375.) Prior to the adoption of Rule 375, no supreme court rule provided for the imposition of fees and costs on a party as a result of an unwarranted appeal. Supreme court rules as to appeals supersede all statutory provisions, and consequently, Supreme Court Rule 375 provides the exclusive means by which the appellate court may impose sanctions for frivolous appeals.

Having determined that Rule 375 vests, in this court, the authority to impose sanctions, we nonetheless conclude that petitioner's conduct here does not so warrant. As a final consideration of Regal's request for sanctions, we note that Rule 375, which was adopted subsequent to the filing of this appeal, is, like section 2—611, penal in nature. As such, it does more than effect a mere change in existing procedure; it imposes an obligation which did not previously exist. Thus, it may only be imposed prospectively. *Dunaway v. Ashland Oil, Inc.* (1989), 189 Ill. App. 3d 106, 117; *Board of Education of School District No. 170 v. Illinois State Board of Education* (1984), 122 Ill. App. 3d 471, 461 N.E.2d 567.

For the foregoing reasons, we affirm the order of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.