**INDEPENDENCE APARTMENTS ASSOCIATES, MISSOURI LIMITED PARTNERSHIP, Plaintiff,**

v.

**LOUISIANA–PACIFIC CORPORATION, Defendant.**

**No. Civ. 97–721–JO.**

United States District Court,
D. Oregon.

March 31, 1999.

Nunc Pro Tunc March 30, 1999.

Justine Fischer, Portland, OR, Steve W. Berman, Carl H. Hagens, Jeffrey C. Grant, Hagens & Berman, Seattle, WA, for plaintiff.

Thomas C. Sand, Merrill Max Williams, II, Sabrina P. Loiselle, Miller Nash Wiener Hager & Carlsen, Portland, OR, for defendant.

## AMENDED OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Independence Apartments Associates brings this action against defendant Louisiana–Pacific Corporation ("L–P") alleging claims arising out of L–P's manufacture and sale of certain allegedly defective siding in 1986.

This is the third round of motions in this litigation. L–P's two earlier motions to dismiss effectively narrowed plaintiff's remaining claims to two: Breach of express warranty and fraud. The last round of motions, decided in March 1998, also revealed that if the siding was in fact ever "A" grade as alleged, the express warranty that would have applied to the siding contained an "original owner" limitation, as follows:

The above warranties are given only to the original owners of the structure on which the siding is installed.

Based on that language, it appeared very likely that plaintiff could not prevail on either claim. Nonetheless, I declined to dismiss the case on L–P's Rule 12 motions and allowed the parties to proceed with discovery.

## THE PRESENT MOTIONS

L–P now seeks summary judgment on both claims. In support of the motion, L–P primarily relies on the warranty language quoted above, and evidence that (according to L–P) demonstrates that the siding sold to the wholesaler, Block Wholesaler Lumber Co., was utility grade and thus never subject to any warranty. In addition, L–P argues that plaintiff cannot prove certain elements of the fraud claim.

Plaintiff argues in response that despite the "original owner" limitation in the warranty, plaintiff obtained the warranty through a series of valid assignments and may, therefore, enforce the warranty as if plaintiff was the original owner. Plaintiff also argues that there are questions of fact that preclude summary judgment on the warranty and fraud claims.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Before reaching the merits of the parties' arguments, I must address two preliminary matters. First, as discussed at oral argument, the parties have not addressed the issue of what state's law governs the issues in this case. Based on the allegations and evidence, it appears that Missouri, Oregon, Idaho, and Illinois potentially each have some interest in the dispute. The parties, however, agreed on the record during oral argument to application of Oregon law, and the court will proceed accordingly.[1]

Second, plaintiff argues that the court has already ruled against L–P on most of the issues now presented. *See* Plaintiff's Opposition, pp. 1, 6, 7. To the contrary, my earlier denial of L–P's motion to dismiss was based on my determination that a decision under Rule 12 standards was not appropriate and that the parties should be permitted to complete discovery before the issues were finally decided.

1. *Assignment of Warranty*

■ Express warranties are contracts and are, therefore, assignable like any other contract. Under Oregon law, "[a] seller, as the master of the warranty's destiny, is free to make it as broad or as narrow as it chooses." *Dravo Equipment Co. v. Ger-*

man, 73 Or.App. 165, 170, 698 P.2d 63 (1985). L–P relies on the following excerpt from *Dravo* in support of its argument that the "original owner" limitation precludes assignment:

> "Express warranties can be limited in effect, duration and transferability. Because the seller is free to create an express warranty in any fashion it chooses, there is no reason why the warranty should not extend to remote purchasers *when it is not so limited.*"

*Dravo,* 73 Or.App. at 170, 698 P.2d 63 (emphasis added).

In *Dravo,* the plaintiff equipment company sold a tractor to BB & B. The warranty contained a restriction on duration (1500 hours), but was not limited to BB & B and contained no restriction on transferability. BB & B sold the tractor. When the buyers attempted to enforce the warranty by refusing to pay for repairs, the plaintiff brought action to foreclose a nonpossessory lien. Both the trial court and the court of appeals determined that the buyers could enforce the warranty. The court of appeals explained that

> The express warranty in this case provided that the tractor engine was guaranteed for 1500 hours. *Its enforceability was not expressly limited to BB & B,* nor did plaintiff restrict its transferability. The only limiting factor was its duration. *** Given the unrestricted terms of the warranty, there appears to be no reason why it cannot be enforced by defendants.

*Dravo,* 73 Or.App. at 170, 698 P.2d 63 (emphasis added).

Of course, in contrast to the emphasized language, in this case L–P did limit the warranty to the "original owner," and it is

---

**1.** I note that Missouri law on the issue of assignment of express warranties differs from Oregon and Illinois law, and appears to be more lenient in permitting assignment under certain circumstances even in the face of warranty language limiting or prohibiting assignment. *Compare Korte Construction Co. v. Deaconess Manor Association,* 927 S.W.2d

395, 401–402 (Mo.App.1996) (assignment in violation of contract terms not barred where contract is no longer executory vis-a-vis the assigning party) with *Dravo Equipment Co. v. German,* 73 Or.App. 165, 170, 698 P.2d 63 (1985) and *Collins Co. v. Carboline Co.,* 125 Ill.2d 498, 127 Ill.Dec. 5, 532 N.E.2d 834 (1988) (discussed *infra* ).

this distinction on which L–P relies. Plaintiff purports to find support in *Dravo* as well, but in doing so overlooks the fact that in *Dravo*, unlike here, the warranty was not restricted to a particular warrantee.

*Dravo* is cited in *Collins Co. v. Carboline Co.*, 125 Ill.2d 498, 127 Ill.Dec. 5, 532 N.E.2d 834 (1988), another case the parties cite and discuss. In *Collins*, the Illinois Supreme Court was called upon to answer a question of Illinois law certified to it by the Eighth Circuit. The certified question was:

> In the absence of original contractual privity, does an express warranty extend to an assignee's right to sue for purely economic loss and consequential damages?

*Collins*, 127 Ill.Dec. 5, 532 N.E.2d at 835.

The court answered the question in the affirmative. In doing so, the court noted that the warranty at issue did not specifically identify the warrantee, nor did it forbid assignment. The court observed:

> *Nowhere did the warranty state that it extended or was limited to the "owner,"* whoever or of whatever that might be. ***

> It is also noteworthy that, despite the large number of terms and conditions expressed by the warranty form, no term forbade assignment of rights or obligations by any party.

*Collins*, 127 Ill.Dec. 5, 532 N.E.2d at 835–36 (emphasis added).

The Illinois court examined decisions from other jurisdictions, including *Dravo*, and provisions of the Uniform Commercial Code ("UCC"), and ultimately determined that under Illinois law, rights under an express warranty can be assigned in the same way as other contract rights if the warranty does not fall within one of the four exceptions to assignability set forth in UCC section 2–210(2). These four exceptions are where assignment (1) "would materially change the duty of the other party"; (2) would "increase materially the burden or risk imposed on him by his contract"; (3) would "impair materially his chance of obtaining return performance"; or would be contrary to the parties' agreement. *Collins*, 127 Ill.Dec. 5, 532 N.E.2d at 840 (*quoting* Ill.Rev.Stat.1979, ch. 26, par. 2–210(2)); *see also* ORS 72.210(2) (same).

The court determined that assignment of the warranty at issue in that case did not implicate any of the above four exceptions. The court also noted that in holding that the warranty could be assigned,

> [o]ur decision also potentially gives effect to the ostensible promise of performance made by Carboline in its warranty, instead of rendering the promise illusory on the happenstance basis of a transfer of the warranted goods before the end of the stated warranty period. After all, Carboline could have included a limitation on assignment in its express 10–year warranty if it had so desired.

*Collins*, 127 Ill.Dec. 5, 532 N.E.2d at 842.[2]

Notably, however, in contrast to the L–P warranty, the warranty at issue in *Collins*, "despite its voluminous detail, *does not in terms limit its benefit to a specified warrantee* ***." *Collins*, 127 Ill.Dec. 5, 532 N.E.2d at 842 (emphasis added). Plaintiff's reliance on *Collins* for the proposition that "warranties can be assigned to remote purchasers" (Plaintiff's Opposition, p. 9) again overlooks this important distinction.

Thus, Oregon law, as well as Illinois law,[3] tends to support L–P's position, but only in the sense that the cases acknowledge that the seller can restrict an express warranty as it sees fit. As noted, neither case involved a warranty restriction to the original owner or to a specified warrantee. Likewise, however, neither case supports plaintiff's position that it may enforce the

---

**2.** Plaintiff in our case similarly argues that the 25–year warranty period would be illusory if limited to the original owner.

**3.** *See* footnote 1.

warranty even though it is not the original owner.

Although assignability of L–P's warranty presents an interesting legal issue, I need not resolve it to decide the pending motion. As explained below, plaintiff's claims are not supported by specific, admissible evidence sufficient to create triable issues of fact, and must be dismissed on that basis.[4]

### 2. *The Warranty Claim*

■ Even assuming that plaintiff could enforce the warranty, plaintiff is required to prove that the warranty applied. To do so, plaintiff is required to produce, for purposes of the present motion, specific facts showing that the siding originally sold by L–P to Block Wholesale and by Block Wholesale to Market Center Development, and ultimately installed on the Mansion Apartments was in fact "A" grade siding subject to a warranty. *See* Fed. R.Civ.P. 56(e); *T.W. Elec. Service,* 809 F.2d at 630. In other words, plaintiff must produce specific facts sufficient to permit a reasonable fact finder to determine that the siding installed on Mansion Apartments in 1986 or 1987 was, at least initially, designated "A" grade. Despite years of litigation and thorough discovery, the best plaintiff has been able to produce is "some metaphysical doubt as to the material facts"—a showing the U.S. Supreme Court has held to be insufficient under federal summary judgment practice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The invoices show that L–P did sell some "A" grade siding to Block Wholesale near the time that Block Wholesale sold siding to the Market Center Development and the Mansion Apartments were built. Plaintiff has presented no evidence that the siding actually installed on Mansion Apartments was the "A" grade siding documented in the invoices. Likewise, plaintiff offers no explanation as to why the alleged "A" grade siding bore the paint stripes indicative of utility grade siding,[5] or how the stripes got there without anyone in the chain of ownership knowing about it.

Moreover, although plaintiff argues, based on the invoices, that L–P represented that the siding was "A" grade, the invoices show only that Block Wholesale priced certain siding it sold to Market Center Development at "A" grade prices. Any inference that L–P, rather than Block Wholesale, represented that the actual siding at issue was "A" grade would be based on pure speculation, not "drawn from underlying facts that are not in dispute, such as background or contextual facts," as required by Ninth Circuit jurisprudence. *See T.W. Elec. Service,* 809 F.2d at 631. Plaintiff's entire theory about L–P's alleged sale of *this siding* as "A" grade siding and later "secret" downgrade of *this siding* to utility grade is built of speculation and cannot, therefore, be submitted to the finder of fact.[6]

### 3. *The Fraud Claim*

As alleged and pursued in its pleadings, plaintiff's fraud claim is based solely on two alleged "misrepresentations."[7] These are:

---

4. I note for the parties' benefit, however, that if it were necessary to my decision to resolve this question, I would be inclined to rule that the "original owner" language is a valid and enforceable restriction on assignment of the warrantee's rights, at least under Oregon law.

5. The paint stripes were revealed during the 1993 inspection. By that time, the siding—whatever it was—had been in place and covered with paint for six or seven years.

6. The Minnesota Assurance of Discontinuance, Exhibit I to Affidavit of Jeffrey Grant, while interesting, does not demonstrate that L–P sold the particular siding at issue in this case as "A" grade or that the siding L–P sold to Block Wholesale as "A" grade ever made its way to the Mansion Apartments construction site.

7. At oral argument, plaintiff's counsel also asserted that another instance of fraud was L–P's original sale and "secret downgrading" of the siding. Assuming that any claim arising

1. In 1993, an L–P inspector told plaintiff's predecessor that the siding was utility grade and not warranted.

2. In 1996, in connection with plaintiff's submission of a warranty claim under the L–P siding litigation settlement, L–P told plaintiff that the siding was utility grade and not subject to the class action settlement.

L–P argues that plaintiff's fraud claim fails for the following reasons:

1. Plaintiff cannot prove a misrepresentation, because the siding was in fact utility grade, which is all that L–P's representatives ever stated. In other words, L–P's representatives told the truth.

2. Plaintiff cannot prove damage flowing from the alleged misrepresentations. This argument rests on the "original owner" warranty restriction, which (if nonassignable) would preclude plaintiff from claiming any damages from its inability to enforce the warranty, even if it could prove L–P committed fraud.

3. Plaintiff cannot prove justifiable reliance. Given the focus of plaintiff's fraud claim, the question here is whether plaintiff has shown that it relied on L–P's representation that the siding is utility grade, to plaintiff's detriment. Instead of focusing on that issue, however, plaintiff argues that a homeowner or a building owner need not prove reliance on the warranty to prevail on an express warranty claim. Plaintiff asserts "[r]eliance simply is not an element of an express warranty claims" (Plaintiff's Opposition, p. 14), which may be true, but misses the point by failing to address the reliance element of the *fraud* claim as opposed to an *express warranty* claim. *See* Plaintiff's Opposition, pp. 13–16.

■ Under Oregon law, the elements of fraud, with the exception of damages, must be proven by clear and convincing evidence. *Riley Hill General Contractor v. Tandy Corp.*, 303 Or. 390, 392, 737 P.2d 595 (1987). In deciding L–P's motion, I must take into account that evidentiary standard, and must grant the motion if plaintiff's proof is of "insufficient caliber or quantity" to allow a rational finder of fact to find fraud by clear and convincing evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 253–255, 106 S.Ct. 2505 (determination of whether a given factual dispute must be submitted to a jury "must be guided by the substantive evidentiary standards that apply to the case").

■ As discussed above, plaintiff's allegations concerning the nature of the siding—"A" grade or utility—are unsupported by specific evidence. Plaintiff's claim that L–P misrepresented the nature of the siding is, therefore, similarly speculative. Indeed, as L–P argues, it appears that the L–P inspectors merely told the truth, *i.e.*, that the siding was in fact utility grade. Additionally, plaintiff has proffered no evidence demonstrating justifiable and detrimental reliance on the alleged misrepresentations, and has failed even to address the need for such evidence in the context of the fraud claim.

Viewing the evidence through the prism of the clear and convincing evidentiary standard that applies to this claim, as I must,[8] I conclude that plaintiff's evidence is insufficient to create a genuine issue of material fact on the fraud claim. Accordingly, plaintiff's fraud claim must be dismissed.

Throughout the proceedings in this case, I have expressed my belief that plaintiff's

out of those allegations was properly assigned, plaintiff's predecessor in interest, The Mansion Apartments, discovered that alleged "misrepresentation" no later than August 1993, when L–P declined warranty coverage because the siding was utility grade. Plaintiff did not commence this action until May 1997, thus any claim arising out of the original sale is barred by the two-year statute of limitations for fraud. ORS 12.110(1).

**8.** *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

claims were extremely weak. My belief has been confirmed by the paucity of evidence to support plaintiff's claims. L–P's motion for summary judgment is well-taken and is granted in its entirety.

### CONCLUSION

Defendant Louisiana–Pacific Corporation's motion for summary judgment (# 61) is GRANTED and this case is dismissed. Any other pending motions are denied as moot.